## THE HOWARD OIL COMPANY v. B. F. DAVIS.

### No. 2876.

1. **Construction of Statutes.**—When there are words in a statute expressive of a particular intent, and other words indicating a general intent inconsistent therewith, the particular intent must be taken as an exception to the general, so that all the parts of the law may stand.

2. **Jury Law.**—Construing articles 3053 and 3055, Revised Statutes, *held* that the court has power to dismiss a jury selected for any week of a term until another week or further day of the term, for service.

3. **Damages—Evidence.**—In a suit for damages resulting from injuries caused from the alleged negligence of defendant, when it is shown that the plaintiff was following a particular occupation when injured, he may show by his own evidence that it was his intention to continue in that occupation, from which he was disqualified by his injuries. He may also state that though not skilled in the occupation, he was employed in it and educating himself for proficiency when injured. His impaired capacity is an element in estimating damages, and additional skill that he might have acquired may be shown.

4. **Evidence.**—See opinion for evidence objected to as irrelevant held admissible as being in connection with other evidence in support of an issue in the case.

5. **Excessive Verdict.**—There can be no fixed rule by which to estimate in money compensation for physical and mental suffering. See statement of case for facts under which it was held that a verdict for $6000 was not so clearly excessive as to require a reversal.

APPEAL from Harris. Tried below before Hon. James Masterson.

This suit was brought for damages for injuries occasioned to appellee through the gross negligence of the appellant on February 27, 1888, by the bursting of the engine with which he was working in appellant's employment. He alleged that the blowing up of the machinery was the immediate result of a cracked and defective piston head, of which the company had notice, but of which he did not know, the defect being not apparent but concealed, and it not being his duty to repair or to see to the repair of the machinery.

Appellant pleaded (1) a general denial; (2) that if its machinery was defective as alleged, which was denied, that its defect was hidden from view, was not seen or known by appellant, and could not have been seen or known by the exercise of ordinary care; (3) that if its machinery was defective as alleged, but which was denied, then appellee had knowledge of such defect, and notwithstanding such knowledge upon his part continued in such employment, and therefore assumed the risk and danger of operating said engine; (4) contributory negligence upon the part of appellee in this, that he was the engineer in control of said engine and charged with the duty of running it safely; that by his own carelessness and negligence he permitted too much water to get into the cylinder, which water caused the accident by which he was injured.

Verdict was rendered for $6000, and judgment upon the verdict.

Davis testified that the force from the explosion blew him out through a corrugated iron wall. That it broke his right arm, and dislocated his elbow so that he has never since been able to raise that hand to his head. That the ball joint of his elbow was out of the socket, and that Dr. Stuart, who treated him, told him it would never grow together again; that he had by reason of this no wrist motion, and could not wash his face or comb his hair with that hand. That he was between life and death and unconscious for a number of days after the blow, and suffered a great deal when he returned to consciousness. He suffered the most in his chest and legs; could not stand, and for months could not draw a long breath. Had no grip now in his right hand to enable him to use a hammer, nor the usual grip of a man; that he could not use his right arm at all; if he used it for fifteen minutes he could not use it the following day. That he was twenty-five years old at the time of the accident, and was an engineer; that he was not a skillful engineer, but was educating himself in that business, and it was his vocation in life; he had adopted that profession, and lacked nothing but experience to make him a first class engineer. That he could not follow that profession now by reason of his injuries, and that his injuries have thrown him out of business; that he can follow a business where no physical ability is needed, but can not take a position where labor on his part is required. That he has received about the same wages since his injuries as at the time, but in employment that only lasts a part of the year, i. e., five or six months. As an engineer he could have had constant employment.

The witness Court testified that plaintiff was an industrious, capable man, and a man of good habits. That his hurts are such as to prevent his ever pursuing the occupation of an engineer; his arm is too weak to enable him to do his own repairs, and that would detract from his wages.

Merritt testified that the piston came off the rod and knocked out the head of the cylinder, carrying with it the plaintiff Davis and all through

the wall, and throwing them twenty-five feet, breaking plaintiff's right arm, and bruising him up severely otherwise.

There was conflicting evidence as to the extent of plaintiff's suffering.

*Baker, Botts & Baker*, for appellant. — 1. The court erred in overruling defendant's motion to strike from jury list the jurors named, because said persons were improperly on said jury list, and were never summoned by the sheriff as required by law; and because the defendant, after exhausting the six challenges allowed him by statute, was forced to accept upon said jury list some of said objectionable persons. Rev. Stats., arts. 3051–56.

2. The court erred in permitting the plaintiff B. F. Davis, when testifying in his own behalf, to state what vocation he intended to follow in life, and permitting him, over defendant's objection, to testify that he intended to be an engineer—all of which testimony was irrelevant and objected to at the time. Field on Dam., p. 615; Wood on Rys., p. 1239; Masterson v. Mount Vernon, 58 N. Y., 391; McIntyre v. Railway, 37 N. Y., 287; Walker v. Railway, 63 Barb. (N.Y.), 260.

3. The court erred in permitting the witness Carl Court to testify as follows: "I don't know anything about the piston being cracked, but I called Mr. Johnson's attention to the click of it several times, and there was a constant tightening up of the piston, to which I objected all the time. I kept telling Mr. Johnson that it was in the cylinder, and told him that if he tightened the quarter boxes they would not last two months, and I told him then there was something wrong in the cylinder;" which evidence was admitted over defendant's objection made at the time.

4. It is error in the court to admit, over defendant's objection, irrelevant testimony calculated to mislead the jury. De Leon v. White, 9 Texas, 598; Waul v. Hardie, 17 Texas, 553.

5. The court erred in refusing to grant the defendant a new trial, because the verdict of the jury is grossly excessive in this, that the testimony shows that the plaintiff was confined to his bed but a few days, that his arm is almost as strong as it ever was, and that continuously from the time of the accident up to the date of the trial he has earned more money per diem than he was earning at the time of the accident. Railway v. Benitos, 59 Texas, 327; Railway v. Morin, 66 Texas, 225.

*Hutcheson, Carrington & Sears*, for appellee.—1. The court, as authorized by the statute, simply adjourned this jury over from one day of the term to another without compelling them to serve again, who had already served six days at that term. There is no inhibition against the voluntary service of a juror for more than six days at the same term of the court. Rev. Stats., art. 3055; Garcia v. The State, 5 Texas Ct. App.,

337; Tuttle v. The State, 6 Texas Ct. App., 556; Meyers v. The State, 7 Texas Ct. App., 640; Dunn v. The State, 7 Texas Ct. App., 600.

2.  It was proper and legitimate for the plaintiff Davis to show to what vocation his life was devoted.  That is always an essential inquiry in the ascertainment of compensation for injuries to the person.  Pierce on Rys., 396; 3 Suth. on Dam., pp. 719, 722, 723; Railway v. Ormont, 64 Texas, 490; Railway v. Irvine, 64 Texas, 529; Railway v. Douglas, 73 Texas, 325, 330.

3.  Carl Court's testimony was relevant and material.  The cracked piston was in the cylinder, and while this witness did not know just what was wrong in the cylinder, his testimony went to show the fact that there was a defect in some machinery inside of the cylinder, and that the defendant company had notice of it.  1 Greenl. on Ev., 51.

4.  The evidence unquestionably sustains the verdict.  The utmost that appellant can claim is that it is conflicting.  In neither event will this court disturb the verdict.

As to liability for defect in the engine.  Railway v. Crenshaw, 71 Texas, 340; Railway v. Whitmore, 58 Texas, 276; Railway v. O'Hare, 64 Texas, 600.

The verdict on the facts will not be disturbed.  Oil Co. v. Farmer, 56 Texas, 301; Railway v. Lee, 69 Texas, 560; Railway v. Dawson, 62 Texas, 260; Railway v. Larkin, 64 Texas, 454; Lewy v. Fischl, 65 Texas, 311.

COLLARD, JUDGE.—There is a conflict in articles 3053 and 3055 of the Revised Statutes in reference to the organization of juries for the week. Article 3053 provides that the jurors shall be selected from the names included in the list drawn by the jury commissioners for the week, and article 3055 provides that the court may adjourn the whole number of jurors for the week, or any part thereof, to any subsequent day of the term.

The court below directed the jury for the week ending November 2, 1889, to report on November 4 for a continuance of service, but stated to them that so many of them as had served for six days would not be compelled to serve for the next week.  Three of the jurors who had served for six days during the week ending November 2 reported for service on the following Monday without being summoned in the regular way by the sheriff, and were taken as jurors for the week.

Defendant, after exhausting his challenges, was compelled to take one of these jurors, after protesting against them by motion which was overruled by the court.  The question now is, did the court have the power to order the jurors for one week to return for service the next week, and so constitute them a part of the jury for that week?

Under the circumstances of the case as presented, both of the clauses of the statute quoted can not be followed.  Which of the two, then, shall have precedence?  Mr. Bishop lays down the correct rule for such a conflict as follows:  "It is a common doctrine never questioned that for the purpose of interpretation all the parts of a statute are to be looked at to-

gether, and one part may control another. If possible they are to be reconciled. Thus, where there are words expressive of a general intention, and then of a particular intention incompatible with it, the particular must be taken as an exception to the general, and so all the parts of the act will stand." Bish. on Written Laws, sec. 63; Sedg. on Con., etc.

There can be no doubt as to the meaning of the parts of the statute under consideration. It was clearly the intention of the law makers to confer upon the court the power and right to adjourn jurors for one week, or any of them, to another week or day of the term for service. In doing this the court would interfere with the general provisions of the law of forming juries. This particular intention of the law ought to have effect when it conflicts with the general intention. It stands as the exception to the general law—that is, the general law as to the formation of juries will be followed *unless* the court under the power given by this special provision has ordered jurors of a previous day of the term to attend for service. The general law must in such case yield to the extent that it is so interfered with.

The court permitted the plaintiff to testify that he was not a skillful engineer; was acting as engineer at the time of the accident; was receiving $56 per month for his services; was educating himself in the business and intended to be an engineer, but was incapacitated by reason of his injuries from following that business. Defendant objected to his stating that he intended to be an engineer, because the evidence was irrelevant, as shown by bill of exceptions. Error is assigned upon the ruling.

It has been frequently held in this State, and has been generally so held, that impaired capacity to labor and follow a business or vocation is a proper element of damages in cases like this. Railway v. Lyde, 57 Texas, 505; Walker v. Erie Ry., 63 Barb., 260; Pierce on Rys., 301, 302, and note 3.

The general rule has been laid down as follows: " The age and occupation of the injured person, value of his services—that is, the wages he has earned in the past, whether he has been employed at a fixed salary or as a professional man—are proper to be considered. He is entitled to recover for the disabling effect of the injury upon his capacity to earn, not only up to the time of the trial, but for all probable future disability in that respect." 2 Wood Ry. Law, 1239, 1240. " Mere possible or speculative consequences are too remote," says the same author. " If fairly probable and not merely possible they are a proper element of damages." Id., 1241.

The jury are, to a great extent, governed by mere probabilities in estimating such damages. If it would be legitimate, as it is, to presume that plaintiff would have continued his occupation as an engineer if he had not been disabled, there can be no reason why he could not prove it, if true, at least in connection with the fact that he was following the occu-

pation at the time.  Additional skill that one might be expected to acquire was held a proper inquiry.  Railway v. Ormond, 64 Texas, 490.  To do this it would not be improper to know or at least to have the most certain evidence attainable as to the future occupation.  In view of the fact that plaintiff was employed as an engineer at the time he was injured, we think he could show that it was his intention to continue in that occupation.

Appellant assigns the following error: "The court erred in permitting the witness Carl Court to testify as follows: 'I don't know anything about the piston being cracked, but I called Mr. Johnson's attention to the click of it several times, and there was a constant tightening up of the piston, to which I objected all the time.  I kept telling Mr. Johnson that it was in the cylinder, and told him that if he tightened the quarter boxes they would not last two months, and I told him then there was something wrong in the cylinder;' which evidence was admitted over defendant's objection made at the time, as shown by bill of exceptions."

The bill of exceptions complains of the evidence "because the witness had said that he did not know anything about a crack in the piston head, because the facts testified to were not alleged in the petition, and were irrelevant to any issue in the case, and because the plaintiff should be confined in his evidence to defects in the cylinder head and not in the cylinder."

Plaintiff's petition alleges that while he was operating the engine the piston head thereof broke and knocked and broke the end of the cylinder, and said piston head and the end of the cylinder were blown out of and from the cylinder of the engine in which said piston rod worked; that the engine and its parts appeared to him to be in good order and safe, but said piston head had been cracked and damaged for some time before it was blown out, but plaintiff did not know of it," etc.  This same witness testified that the tightening of the quarter boxes put additional strain on the spider, and was calculated to crack it; and again that the tightening up of the engine put such a strain on the spider that it broke.  He also stated that "the spider was a part of the piston head." Proof of the tightening of the quarter boxes we see then was not irrelevant but was responsive to the very issue made in the petition.  The piston head worked in the cylinder, and the testimony of the witness as to the defect being in the cylinder, taken in its proper connection, may be fairly construed to mean that it was *inside* the cylinder in the piston head, and was directly in support of the issue.

Appellant says the court should have granted the motion for a new trial because the evidence of its witnesses Schaumleffler, Boggs, Johnson, and Cathcart conclusively shows that the accident occurred by the negligence of plaintiff in permitting water to get into the cylinder.

The evidence of these witnesses does strongly tend to show that the accident so occurred; but on the other hand there is quite positive evidence

to show that there was a crack in the piston head, which finally gave way and caused the explosion. There is a conflict in the evidence, and nothing more. It is not our province to declare that the jury gave more weight and credence to the testimony of plaintiff's witnesses and less to that of defendant than it was entitled to, especially after the court below has refused a new trial on that ground.

We do not think the verdict is so clearly excessive as to warrant an appellate court in setting it aside. To a great extent the damages are awarded as a compensation for pain and suffering, for the estimating of which there are no definite rules. There is no reason why we should discuss this question further or reiterate what has been so often said by our courts. There is no error in the charge of the court; none is claimed by appellant; neither the amount of the verdict nor any other fact in the case indicates passion or prejudice on the part of the jury; the verdict was approved by the judge who tried the case, and we see no grounds for interference by the appellate court. Walker v. Railway, 63 Barb., 260; Railway v. Douglas, 73 Texas, 325; Railway v. Porfert, 72 Texas, 344; Railway v. Johnson, 72 Texas, 95; Railway v. Gilbert, 64 Texas, 536, and authorities cited in these cases.

We conclude the judgment should be affirmed.

*Affirmed.*

Adopted March 25, 1890.