### GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. D. F. WORTH.

#### Decided January 20, 1909.

**1.—Jury—Challenge to Array.**

The statute provides that a party to a suit which is to be tried by jury, may, before the jury is drawn, challenge the array of jurors upon making it appear that the officer summoning the jury has acted corruptly, and has wilfully summoned jurors known to be prejudiced against the party challenging, or biased in favor of the adverse party; and a challenge to the array cannot be made for any other cause.

**2.—Same—Challenge to Panel.**

That the commissioners did not draw a separate jury for each week of the term of the District Court, but, under instructions of the court, drew and returned a list of names for the term, and those not excused were held as jurors for the three weeks of the term, was not cause for challenge to the panel in a trial occurring in the third week.

**3.—Same.**

The provision of the statute that the court may adjourn the whole number of jurors for the week, or any part thereof, to any subsequent day of the

term, clearly shows the intention to confer upon the court the power and right to adjourn jurors for one week, or any of them, to another week or day of the term for service; and the general provision requiring a jury to be drawn and summoned for each week must yield to this particular intention.

#### 4.—Contributory Negligence—Burden of Proof.

When the case made by the injured servant does not expose him to a suspicion of negligence, the burden of proof upon the issue of contributory negligence is upon the master.

#### 5.—Same—Definition.

A definition of contributory negligence in a charge as "the want of ordinary care on the part of the injured person, that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, which, concurring with the negligence of the defendant, if any, proximately caused the injury," is not subject to the objection that it defined the term as the want of ordinary care which proximately caused the accident and injury.

#### 6.—Evidence—Opinion—Derailment.

Where, upon the issue as to the place of the derailment of an engine, a witness testified that it was near the marks that the engine left the rails and that he had observed how engines mark the rail and that such marks were similar to the marks that he had observed on the rail, it was not error to exclude his further testimony that the truck wheels of an engine would make more distinct marks in passing over it than would the trucks of a car and would be like the ones observed, especially as he admitted that he did not know whether the marks were made by an engine or by a car.

#### 7.—Same—Expert Testimony—Capacity to Labor—Personal Injuries.

A physician, after detailing all symptoms of the ailments of the injured party and giving the grounds upon which he based his opinion, could testify that such party could not perform the duties of an engineer on account of his injuries, over objections that it was the conclusion of the witness, not within the domain of expert testimony, and an invasion of the province of the jury.

#### 8.—Same—Impeachment of Witness.

Where a section foreman of the railway company testified that the ties on the roadbed had been examined by him two or three weeks before the derailment and wreck of the train and that he did not discover any rotten ones, and that ties and track were in good condition just before the wreck, and that he burned the broken ties at the place of the wreck, testimony that a rule of the company required such material as broken rails, axles or debris which may be of use in determining the cause of an accident to be preserved, was admissible on cross-examination as tending to discredit the evidence of the witness and to show the destruction by him of evidence required by the rule to be preserved.

Appeal from the District Court of Val Verde County.   Tried below before Hon. Solon Stewart.

*Baker, Botts, Parker & Garwood, W. B. Teagarden* and *W. F. Boggess,* for appellant.

*C. K. McDowell, Geo. M. Thurmond* and *Walter Gillis,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit for damages, arising from personal injuries, instituted by appellee. The grounds of negligence were stated to be defects in the roadbed, rails of too light weight, and old, worn and rotten ties, which caused the track to give

away under the ponderous engine, of which appellee was the engineer, and caused a derailment in which appellee received his injuries. Appellant pleaded assumed risk and contributory negligence in running the engine around a curve at a reckless and dangerous rate of speed in violation of a rule of appellant, and in spite of the warning and remonstrance of the conductor. The cause was tried by jury and resulted in a verdict and judgment for appellee in the sum of $10,000. This is a second appeal, 107 S. W., 958.

The facts justify the conclusion that the wreck was caused through the negligence of appellant in permitting rotten ties to remain on its roadbed, which gave way under the engine and caused the derailment and consequent injury of appellee. Appellee was not guilty of contributory negligence. There was sufficient evidence upon which to base a finding that the train was running at the rate of twenty-five to twenty-eight miles an hour when the derailment took place, a rate of speed required by the train orders issued to appellee by appellant. The minimum time fixed by appellant for the run between Bean and Langtry, the section on which the derailment occurred, was fourteen minutes, which required a rate of about twenty-eight and nine-tenths miles an hour. There was a bulletin limiting the speed to eighteen miles an hour on curves of six degrees or over, but in subsequent time tables the minimum time between Bean and Langtry was fixed at over twenty-eight miles an hour and it would have been an utter impossibility, if the speed of the train had been reduced to eighteen miles an hour for every curve of six degrees or over, to have run on the schedule time, as there were several of them. Witnesses for appellant swore that the minimum rate of twenty-eight miles an hour was not considered excessive or dangerous, and that such rate of speed was necessary in order to make the minimum time required by appellant. The bulletin as to rate of speed around curves had been issued and posted several years before the accident occurred, and had been reissued from time to time, but it was practically ignored and annulled by time tables, issued after the issuance of the last bulletin. There was no sign nor anything along the road to indicate the degree of curves to engineers. There was testimony tending to show that where appellant contends the engine left the track the curvature was less than six degrees. The train was going up grade when the derailment occurred, and it consisted of the engine and thirty-three freight cars, five or six of the cars being heavily loaded with copper and salt. It was proved that the ties were rotten ones where the wreck occurred. The ties were redwood, which is a wood that is soft and easily split. The conductor of the train made reports of the wreck, one immediately after it occurred, in which he stated that the train was properly handled and was running about twenty-five miles an hour. On the trial he testified that the train was moving at the rate of fifty miles an hour. The testimony showed that the engine was about sixty feet east of where the cars were wrecked and that the ties at the point where the cars were wrecked were very rotten. The evidence justifies the conclusion that the wreck was caused by the rotten and defective ties. The head brakeman was on the top of the car next to the engine

and his body was found under a car which was wrecked about sixty feet west of the engine. The ties were in a very unsound condition at that point. The jury were justified in finding that the engine was not running at an excessive or dangerous rate of speed, and that appellee was compelled to run at the rate of speed he was going in order to comply with the commands of appellant. These conclusions dispose of the first, second, third and fourth assignments of error.

The fifth, sixth and seventh assignments of error assail the action of the court in refusing to sustain its challenge of the .panel of jurors from which the jury was selected, the grounds of challenge being that they were not selected nor summoned for the week in which they were tendered and in which the cause was tried, nor were they selected or summoned for any particular week of the term, but were selected and summoned for the entire term of three weeks, and that they had already served for two weeks previous to the week in which this cause was tried. The following facts in connection with the challenge are certified by the court:

"The jury commissioners for the fall term, 1907, of this court did not select and draw a separate jury for each of the three weeks of this term of court; and did not draw and return into court any list of jurors designated specifically for the third week of the term, but said commissioners under instructions of the court at the fall term thereof, intentionally drew and returned into court one list of names only, that is, one jury list containing thirty-six names, which said list was purposely designated as the list of the petit jury for the "Spring Term" of said court, in pursuance of the instructions of the court to the said jury commissioners at the fall term, 1907, as has always previously been the custom of said court in Val Verde County, and the jurors were not assigned by said commission for any particular week of the term, but were designated for the whole term of three weeks under the instructions of the court, and no other return of petit jurors than this was returned by said commissioners for this term of court, and none other issued upon by the clerk.

"Upon the list of petit jurors above referred to, the clerk of this court, on the thirtieth day of March, 1908, issued a venire facias to the sheriff of Val Verde County in which he sets out the list of names returned by the jury commissioners, as above referred to, certifying that it is a true list of the names selected by the jury commissioners to serve at the spring term, 1908, of said court, and then proceeds to command the sheriff to summon each of the foregoing thirty-six persons to be and appear before the District Court of Val Verde County at the courthouse in Del Rio, Texas, on the 27th day of April, 1908, that being the first day of the April term of said court, then and there to serve as petit jurors for the three weeks of the spring term, 1908, of the District Court of Val Verde County.

"The writ was properly attested and the sheriff's return shows service on all the persons named in said list and is in due form of law.

"For various causes fifteen of the persons so summoned were excused, leaving present at the time of the presentation of said motion twenty-one of said jurors present and in the jury panel from which

to select a jury. That the said twenty-one men present and tendered as a jury panel were a part of the thirty-six men selected by the jury commissioners, as above stated.

"The jury so selected and summoned appeared on the first day of the term, to wit, April 27, 1908, and those not excused were duly and legally empaneled, sworn and attended and served as jurors until Saturday of the first week of the term, on which day they were adjourned by the court until the following Monday, the second week of the term, and instructed by the court to appear on that day to serve as jurors the second week of the term, on which latter day, to wit, Monday, the second week of the term, said jurors appeared and served as jurors until the following Friday of the second week of the term, when they were adjourned by the court until Monday morning, May 11, 1908, the third week of the term, and instructed to appear on said day to serve as jurors for the third week of said term, and they so appeared on Monday, May 11, 1908, in obedience to said order of the court."

The court further certified that appellant made no objection to any individual juror on account of the way in which he had been selected and summoned, and after the jury that tried this cause had been selected there remained four men of the original jury panel. The court held that a challenge to the array of jurors could only be made on the grounds provided in the statute, and if there was any tenable ground of objection to the manner of summoning the panel it could only be made available by a challenge to the array. The jury commissioners were legally appointed at the term before that at which the trial was had, and, acting under instructions of the court, they did not comply with the terms of the statute which requires that the names shall be drawn for each week of the term and recorded on as many separate sheets as there are weeks of the term, and shall seal such lists in separate envelopes and endorse the week for which the jurors are chosen on such envelopes. (Sayles' Stats., arts. 3159 and 3160.) The failure to so select the jurors for the different weeks is not made a ground of challenge to the array of jurors, the only ground for such challenge being that the officer summoning the jurors has acted corruptly, and it is provided that no challenge to the array shall be entertained where the jurors have been selected by the jury commissioners under the provisions of the law. (Sayles' Stats., arts. 3202 and 3203.)

It can not be denied that the jurymen were selected under the provisions by the jury commissioners as provided in articles 3158 and 3159, and it was only after the selection that there was a failure to comply with the terms of the statute. Even if it be held that the jurors were not selected under the provisions of the law, it is the ruling of the Supreme Court that such fact does not form a ground for challenge to the array. Roundtree v. Gilroy, 57 Texas, 176. In that case it was held: "The statute provides how and for what causes a challenge to the array may be made. It provides that a party to a suit which is to be tried by a jury may, before the jury is drawn, challenge the array of jurors upon making it appear that the officer summoning the jury has acted corruptly, and has wilfully summoned

jurors known to be prejudiced against the party challenging, or biased in favor of the adverse party. (Rev. Stats., 3074.) Neither of the grounds of challenge given by the statute were relied upon in this cause and none others exist, and the court did not err in overruling the challenge." There is really only one ground of challenge and that is the corruption of the officer summoning the jury, and we believe that the ruling quoted is correct and that no other cause of challenge to the array exists. The Court of Criminal Appeals has held differently in the cases of White v. State, 45 Texas Crim. Rep., 597, and Hurt v. State, 51 Texas Crim. Rep., 338, under arts. 661, 696, Code Cr. Proc., which are similar in their provisions to those provided for in civil cases. We feel constrained, however, to follow the plain language of the statute and the construction placed on such · statute by the Supreme Court.

Appellant did not challenge the jurors individually because of their previous service during the same term of court, and that question need not be considered, the only objection to the jurors being that they had not been specially chosen for the week in which this trial took place. It is not claimed that appellant suffered any injury by the manner in which the jury was chosen. Appellant is contending for a mere abstraction which, unfortunately for it, is not made a ground of challenge to the array.

It will be noted that the panel in question had been continued over from a former week, and it is provided in the statutes that "the court may adjourn the whole number of jurors for the week, or any part thereof, to any subsequent day of the term." The court construing that provision said: "There can be no doubt as to the meaning of the parts of the statute under consideration. It was clearly the intention of the law makers to confer upon the court the power and right to adjourn jurors for one week, or any of them, to another week or day of the term for service. In doing this the court would interfere with the general provisions of the law of forming juries. This particular intention of the law ought to have effect when it conflicts with the general intention. It stands as the exception to the general law, that is, the general law as to the formation of jurors will be followed unless the court under the power given by this special provision has ordered jurors of a previous day of the term to attend for service. The general law must in such case yield when it is so interfered with." Of course, this would not apply unless the jurors were legally selected for some week of the term.

The ninth and eleventh paragraphs of the charge are attacked on the ground that they imposed the burden of proving contributory negligence and assumed risk on appellant. The charges complained of do not place those burdens on appellant, but they might properly have done so under the law. The case made by appellee did not relieve appellant of the burden of proving its defenses. He showed that he was not violating a rule because it had been set aside by the orders of appellant, and the testimony did not show that the derailment took place on a curve of the degree mentioned in the bulletin. Appellant asserts that the derailment took place on an eight degree curve, and refers to the evidence of its witness, C. J. Russell. That

witness does not sustain the assertion. He swore that the marks of the wheels were on the ties at a certain place, leading to the inference that the engine left the rails at that point, and stated: "The degree of curvature at the point where I first saw the marks was about three degrees." Again he testified: "Yes, that was an eight degree curve at the highest point. No, that is not where I saw the marks on the rail. It would be four rails, or a little over, east to where the curve would be eight degrees, about 125, 130 or 140 feet." Appellee's case did not expose him to a suspicion of negligence. In this connection it may be stated that the court charged the jury at the request of appellant as follows:

"You are further charged, gentlemen, that if you find and believe from the evidence that at the time of the derailment of the engine plaintiff was operating the engine at a rate of speed in excess of that allowed by defendant's rules and against the warning of his conductor, and that he was acquainted with such rules and regulations, if any, and if you further find that in so operating the engine, if he did so, he was guilty of negligence, and that this either caused or contributed to his injuries, if any, then he is not entitled to recover, and should you so find the facts to be you will return a verdict for defendant.

"Further applying the rule of assumed risk to the facts in this case, you are charged that with respect to the weight of the engine; the size of the rails in use on defendant's track at the place of the accident; the sufficiency of the track (when maintained with ordinary care) to bear up the engine in question and the condition of the rail, if you should find that the derailment of the engine was proximately due to these things, or any of them, nevertheless plaintiff would not be entitled to recover should you further find and believe that such proximate cause of the accident and the risks thereof were known to plaintiff or were so patent and obvious as that during the previous discharge of his duties he must necessarily have known of such matters and the attending risks, and if you so find the facts to be you will return a verdict for the defendant."

The tenth assignment of error is without merit. The court did not define contributory negligence as "the want of ordinary care which proximately causes the accident and injuries," as is stated in appellant's proposition. The court on the other hand defined contributory negligence as "the want of ordinary care on the part of the person injured; that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, which, concurring with the negligence of the defendant, if any, proximately caused the injuries." Appellant does not attack that definition, but an imaginary one which does not appear in the charge. The court in another part of the charge instructed the jury: "If you believe from the evidence that the plaintiff was guilty of negligence which caused or contributed to cause his injuries, you will return a verdict for the defendant."

The eleventh assignment of error complains of the action of the court in not permitting appellant to prove by McMullin "that the truck wheel of an engine would make a much more distinct mark on,

the rail in passing over it than would the trucks of a car and the same would be like the one he discovered on the rail at the place of the accident." In view of the fact that the witness did testify that it was near the point of the marks that the engine left the rails, that he had observed how engines mark the rail and that the marks were similar to the marks that he had observed, we can not conceive that appellant was injured by the exclusion of the evidence. The witness also admitted that he did not know whether the marks were engine marks or car marks, and did not "know whether there is any way on earth to tell. I can't say whether an engine did it or not." He evidently knew nothing about the matter.

The court permitted Dr. Scott to testify that appellee could not perform the duties of an engineer on account of his injuries. No objection was interposed on the ground that the witness was not qualified as an expert, although it is stated in the brief that he was not, the only grounds of objection being that the testimony was the conclusion of the witness, not within the domain of medical expert testimony, but was an invasion of the province of the jury and was irrelevant, immaterial, remote, speculative and indefinite. The statement made by Dr. Scott was: "Any labor or mental exertion accelerated his heart action. It stood at fifty and exercise raised it to one hundred. It is my opinion that he could not perform the duty of a locomotive engineer at that time, because of his nervous condition and weak heart; it would have had the effect to accelerate his heart action and affect his nervous system generally. Yes, his general health would have been rendered worse." The witness had fully detailed all of the symptoms and was fully competent to testify as to what effect any exertion would have on the nervous system of appellee, and could give a competent opinion as to how the operation of an engine would affect appellee. We gave the grounds on which he based his opinion, and it appeared from the facts that he was fully competent to testify as to the effect that operating a locomotive would have on appellee. The physician, from his general knowledge that some labor and exertion are required in operating a locomotive, and from his acquaintance with the condition of appellee was in a position to testify what would result from appellee operating an engine. It required the knowledge of a medical expert to testify as to the effects of any exertion on the nervous system of appellee. No objection was urged to the testimony of the physician on the ground that he did not know what the duties of an engineer were.

Appellee's witnesses had testified as to the condition of the ties at the place where the cars were wrecked and after C. J. Russell, a section foreman of appellant, had testified that the ties had been examined by him two or three weeks before the accident and that he did not discover any rotten ones, and that the ties and track were in good condition just before the wreck, and that he had burned the broken ties at the place of the wreck, a rule of appellant which required that "such material as broken rails, axles or debris which may be of use in determining the cause of an accident must be preserved," was read to him and he stated that it was a rule. The evidence was proper as tending to discredit the evidence of the witness and to show the

destruction by him of evidence that the rule required him to preserve. It was admissible on the cross-examination of the witness. Appellant says: "This rule was promulgated by defendant for its own private purposes. It is a salutary rule, one purpose of which is to fix the blame of accidents, in the interest of good discipline, and the protection of life and property. It is of no importance to other people." The evidence of those ties would no doubt have been of great importance to appellee in fixing the blame for the wreck, and an observance of the rule would no doubt have worked for "the protection of life and property," if appellant's foreman had not disregarded it and destroyed the evidence. The destruction of the ties was a legitimate subject of inquiry, and the violation of a rule in its destruction gave additional importance to the investigation.

If appellee is injured, as he and his medical witness swore that he was, and if he has suffered the great pain to which he testified, we can not hold the verdict excessive. The question as to whether his condition was caused by intemperance or the injuries received, was submitted to the jury, and they decided adversely to appellant. The sixteenth and seventeenth assignments contain attacks on the charge and are without merit. The judgment is affirmed.

*Affirmed.*

Writ of error refused.