EL PASO & NORTHEASTERN RAILROAD COMPANY v. MARY E. SAWYER.

Decided May 26, 1909.

**1.—Damages—Diminished Earning Capacity—Contract of Carriage—Breach.**

In an action for injuries to a passenger, based on a breach of the contract of carriage, damages for diminished earning capacity resulting from the injuries are recoverable.

**2.—Same.**

While diminished capacity to earn money can be considered as an element of damages in an action to recover for personal injuries to a passenger based on a breach of the contract of carriage, there must be some evidence of the capacity to earn it to justify an instruction to the jury to consider such element in arriving at their verdict.

**3.—Same.**

Testimony of the injured party that before the accident she did not do anything in regard to domestic duties, that she looked after clothing and kept it attended to and that she did not have a household, in the absence of any evidence indicating she is unable to look after the clothing since the accident, did not raise the issue of diminished earning capacity.

**4.—Continuance—Bill of Exceptions—Practice.**

When no bill of exceptions is reserved to the refusal of a continuance, such refusal will not be revised even though the record shows that exception was reserved to the refusal.

ON REHEARING.

**5.—Damages—Diminished Earning Capacity.**

In order to authorize diminished earning capacity to be submitted to the jury as an element of damage, there should be evidence tending to show what was the earning capacity before the injury and the extent to which it has been affected. Dallas Con. E. St. Ry. Co. v. Motwiller, 101 Texas, 515.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Hawkins & Franklin (W. M. Peticolas,* of counsel), for appellant.— Actions which arise from the breach by negligence of some public duty owed by a railroad are actions which sound in tort. Actions which arise from the breach of some contract entered into by a railroad do not sound in tort, but are actions strictly for the breach of the contract, but when the two blend and the action which arises is founded both on the negligent breach of a public duty and the breach of the contract to safely carry, all damages for personal injuries sound in tort and can only be sued for in tort, and the only damage which can be recovered for the breach of the contract to safely carry is the money expended for the ticket, and the money lost by loss of time, and additional expenses, etc. Galveston, H. & S. A. Ry. v. Clemons, 19 Texas

Civ. App., 452; Railway v. McAnulty, 7 Texas Civ. App., 321; Railway v. Campbell, 1 Texas Civ. App., 509; Railway v. Roemer, 1 Texas Civ. App., 191; Railway v. Levy, 59 Texas, 548; Railway v. Shirley, 54 Texas, 148.

*S. Engelking* and *F. G. Morris*, for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit based on the breach of a contract to safely transport appellee from Pittsburg, Pennsylvania, to Los Angeles, California. The breach alleged was a derailment of a train on appellant's railroad and the consequent injuries inflicted on appellee. There were two counts in the petition, one basing the desired recovery on a breach of contract and the other on a tort, but the issue of breach of contract to safely transport only was submitted to the jury. The trial resulted in a verdict and judgment for appellee for $2,500. This is a second appeal of this case, the opinion in the former being reported in 49 Texas Civ. App., 106.

It was held in the opinion on the former appeal of this case that an action of tort could not be sustained by appellee, but that she must base her cause of action on a breach of contract of carriage. While the amended petition, filed after the cause had been remanded, contained two counts, one alleging a breach of contract and the other a tort, the court submitted the case on the breach of contract alone, being guided by the opinion of this court. It is insisted through the first assignment of error that the court should have sustained exceptions to the count alleging a breach of contract because it did not contain any allegations of damages suffered by the appellee by reason of a breach of the contract.

The petition, after setting out that a contract had been made by which appellant and other railroad companies had agreed to safely transport appellee from Pennsylvania to California, and a breach of the contract by reason of a negligent derailment of the car in which she was riding, sets out in detail the injuries received and the damages incurred. The proposition of appellant is that "Actions which arise from the breach of some contract entered into by a railroad do not sound in tort, but are actions strictly for the breach of the contract, but when the two blend and the action which arises is founded both on the negligent breach of a public duty and a breach of the contract to safely carry, all damages for personal injuries sound in tort and can only be sued for in tort, and the only damage which can be recovered for the breach of the contract to safely carry is the money expended for the ticket, and the money lost by loss of time, and additional expenses, etc." From which rather complicated proposition, considered together with the second assignment of error, we gather that the complaint is that appellee could not recover for the impairment of her ability to earn money. The same points were presented on a former appeal, and it was held: "The allegations present a case where there is an overlapping of a contract and a tort, where the contract of carriage is undisputed, and all the facts essential to constitute the tort show at the same time a breach of contract. It is a case where an action as for a tort, or an action as for a breach of contract, may be

brought by the same party, on the same state of facts." In cases of a breach of contract of carriage, the injured party is entitled to all such damages as may fairly and reasonably and naturally arise from the breach, or such as may reasonably be supposed to have been in contemplation of both parties at the time the contract was made as the probable result of a breach of the contract. The only question then presented is, Was the impairment of appellee's earning capacity a natural and proximate result of the breach of contract to safely carry, or was it in contemplation of the parties when the contract was made? We think it clear that the question must be answered in the affirmative. The natural and probable result of a derailment of the train was injury to the passengers, which injuries would probably result in impairing the earning capacity of any one of them.

While diminished capacity to earn money can be considered as an element of damages in cases of this character, there must be some evidence of the capacity to earn it to justify an instruction to the jury to consider such element in arriving at their verdict. (Gulf, C. & S. F. Ry. v. Gordon, 70 Texas, 80; Howard Oil Co. v. Davis, 76 Texas, 630.) In this case there was no evidence whatever of any circumstances or facts tending to show that appellee had any earning capacity. She swore: "Before the accident, in Pittsburg, I did not do anything in regard to domestic duties. I looked after clothing, kept it attended to. I did not have a household." The evidence fails to indicate that she is unable to "look after the clothing" since the accident. Even in a case where it was shown that the capacity of a woman to discharge certain duties about a hotel had been diminished by an injury, there being no evidence of what she could earn before and after the accident, the court held that diminished capacity to do work, and not diminished earning capacity, should have been submitted to the jury. (Fordyce & Swanson, Receivers, v. Withers, 1 Texas Civ. App., 540.) The charge was without evidence to support it, and it was error to give it. The verdict is general, and we do not know to what extent it may have misled the jury. (International & G. N. Ry. v. Simcock, 81 Texas, 503; Houston & T. C. Ry. v. Bird (Texas Civ. App.), 48 S. W., 756.) The rules laid down in St. Louis S. W. Ry. v. Niblack, 53 Texas Civ. App., 619, should govern.

In the case last cited there was some evidence of the injured party having a vocation at which money might have been earned, and the court held: "In order to authorize this element of damage to be submitted to the jury there should be evidence tending to show what was the earning capacity before the injury and the extent to which it had been affected."

The third and fourth assignments of error are met by decisions of this court which hold adversely to the contentions of appellant. (Atchison, T. & S. F. Ry. v. Sowers, 99 S. W., 190; Sawyer v. El Paso & N. E. Ry., 49 Texas Civ. App., 106.) The District Court of El Paso County had jurisdiction, at least as to that portion of the petition founded on breach of contract.

No bill of exceptions was reserved to the refusal to continue the case, and such refusal will not be revised even though the record shows that exception was reserved to the refusal. (Campion v. Angier, 16 Texas,

93; Davis v. Calhoun, 41 Texas, 554; Texas & Pac. v. McAllister, 59 Texas, 349; Contreras v. Haynes, 61 Texas, 103; Supreme Commandery v. Rose, 62 Texas, 321; Bonner v. Whitcomb, 80 Texas, 178.)

Because of the error in the charge the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

The insistence of appellant has caused us to set aside our order overruling motion for a rehearing and to enter into a reconsideration of the facts of this case in the light of the decision of the Court of Civil Appeals of the Sixth Judicial District in the case of Railway v. Niblack, 53 Texas Civ. App., 619. In that case the appellee was a professional nurse, and it was proved that she more than made a living at her profession. The injuries she sustained confined her to her bed most of the time. It was apparent that her earning capacity had been impaired. The court reviewed a number of Texas decisions in each one of which the injured party had some occupation of such a nature that mere proof of the injury indicated damage to the capacity to earn money. In all of these cases there was proof of earning capacity, some basis upon which to predicate a charge for loss or impairment of earning capacity. In the case of Railway v. Smith, 38 Texas Civ. App., 507, the injured party was a farmer and had worked as a section hand, but had never accumulated anything. The court said: "We think it must be conceded that this testimony is insufficient to show what was appellee's earning capacity before he was injured, and he proved no fact which would enable a jury to reach an intelligent conclusion as to the amount of loss sustained in impairment of ability to earn money. While the evidence shows that appellee had worked on a farm and on a railroad section, it does not show or tend to show what was his earning capacity in either employment." In the case of Houston & T. C. Ry. v. Bird, 48 S. W., 756, the injured party was a young teacher, but had never taught. There was evidence, however, that she not only made a living but assisted her father in supporting the family, and the Court of Appeals held: "In order to authorize this element of damage (lessened earning capacity) to be submitted to the jury, there should be evidence tending to show what was the earning capacity before the injury and the extent to which it has been affected." In other words, in those cases, and in all others founded on law and common sense, there must be some basis in the evidence for finding diminished earning capacity, as well as for finding any other matter of damages. This was true in the Niblack case, which appellee insists we have disregarded. When a claim was made in the case of Dallas C. E. St. Ry. Co. v. Motwiller, 101 Texas, 515, that there was a conflict between cases from different Courts of Civil Appeals on the very point under consideration in this case, the Supreme Court said: "It is not clear to our minds that there is any conflict in the decisions referred to by the Court of Civil Appeals. Questions like the first must necessarily be decided upon the facts of each case in which they arise." It was further said: "In many cases the value of time lost by the plaintiff may also be so

proved, while in some such proof can not be made, as in the case of a wife and mother performing the various duties of housekeeper. This is also true of earning capacity and of injury to it. The law only exacts the kind of proof of which the fact to be proved is susceptible, but it does exact that. The earning capacity of the plaintiff in this case, as a stenographer, was probably susceptible of definite proof. If it was otherwise, the facts which made it so should have been shown to have entitled her to have the jury estimate it in their own judgment without fuller proof, and to allow full compensation as for a diminution in the amount of her earnings."

If there had been any evidence that appellee had ever kept house for her son or any one else, that she had ever made up her own bed, or even superintended a servant in attending to household duties, there might be something upon which to base a speculation as to her earning capacity. But no such evidence was offered. Appellee was the only witness who referred to her earning capacity. She swore: "After the accident I was utterly incapacitated to earn a living. Before the accident in Pittsburg I did not do anything in regard to domestic duties. I looked after clothing, kept it attended to. I did not have a household." She no doubt referred to her own clothing that she attended to, and upon this must be based her claim for damages for impaired capacity to earn a living. It does not appear that her ability to attend to the clothes was impaired. Our conclusion, that such testimony did not form a sufficient basis to justify a submission of the issue of impaired earning capacity to the jury, it is contended is in conflict with a decision based on proof that the woman injured was earning her own livelihood and was completely disabled. There is no similarity between the two cases, and each must stand or fall upon its own facts. The motion for rehearing is overruled.

*Overruled.*

Chief Justice James did not sit in this case.