SOUTHWESTERN TELEGRAPH & TELE-
PHONE CO. v. CLARK.    (No. 1695.)

(Court of Civil Appeals of Texas. Texarkana.
Jan. 18, 1917. On Motion for Re-
hearing, Feb. 1, 1917.)

1. RAILROADS ☞68 — EASEMENTS — SPACE
ABOVE PROPERTY.

In acquiring easements for construction and
operation of railways, a company is entitled to
space above territory appropriated necessary for
use of its franchise; such space being as much
a part of the right of way as the ground which
it covers.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 159, 160.]

2. TELEGRAPHS AND TELEPHONES ☞11—CON-
STRUCTION—CROSSING RAILWAY TRACK.

Telephone companies have no right to place
wires over railway tracks in space necessary to
railway company's use without consent or con-
demnation, and, in absence of such right, must
place wires at a reasonable elevation, consider-
ing the uses essential to railway operation.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 7.]

3. TELEGRAPHS AND TELEPHONES ☞20(4)—
INJURY BY IMPROPERLY PLACED WIRES—
PLEADINGS—ISSUES.

Where pleadings charged a telephone com-
pany with placing wires above a railway track
at such elevation that plaintiff, a brakeman, was
injured, not alleging that wires were improperly
secured, but that they were wrongfully placed
at such elevation as to interfere with plaintiff
in the performance of his duties, and defendant
pleaded no right from the railroad, the only
issue was whether such wires did encroach
upon railway company's right of way.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 13.]

4. TELEGRAPHS AND TELEPHONES ☞11—
RIGHTS IN CROSSING RAILWAY TRACK.

A telephone company, when occupying its
own zone above a railway track with its wires,
must use its property so as not to interfere with
railway company's rights.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 7.]

5. TELEGRAPHS AND TELEPHONES ☞20(5)—
CROSSING RAILROAD — IMPROPERLY PLACED
WIRES—INJURY TO BRAKEMAN—EVIDENCE.

The fact that a railway brakeman, walking
on top of a furniture car in discharge of his
duties, was struck by a telephone wire above
the track, alone was evidence that the wires
were within the railway zone, from which jury
might infer negligence.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 13.]

6. TELEGRAPHS AND TELEPHONES ☞20(5)—
IMPROPERLY PLACED WIRES — INJURY TO
BRAKEMAN—SUFFICIENCY OF EVIDENCE.

Evidence held to authorize a verdict for
plaintiff brakeman, injured by a telephone wire
improperly placed above railway track.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 13.]

7. TRIAL ☞194(17)—INSTRUCTIONS—WEIGHT
OF EVIDENCE—NEGLIGENCE.

Instruction that a brakeman had the right to
assume that no telephone wires crossed the
track with which he could come in contact, un-
less he knew or ought to have known of them,
and that character of work and surrounding
conditions might be considered in determining
contributory negligence was not objectionable

as charging upon the weight of evidence, al-
though there was no evidence tending to show
contributory negligence.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 466.]

8. TRIAL ☞260(1)—INSTRUCTIONS—REQUESTS
COVERED BY CHARGE.

Where whatever of merit in requested charg-
es was covered in the general charge, refusal to
give them was not error.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 651.]

9. EVIDENCE ☞545 — COMPETENCY OF EX-
PERT—EXPERIENCE.

Where two witnesses testified to oculist's
reputation as a first-class specialist, and the
doctor testified that he had been an oculist for
eight years, sufficient predicate was laid to
admit his testimony as an expert.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2360–2362.]

10. EVIDENCE ☞536 — COMPETENCY OF EX-
PERT—EDUCATION.

It is not always necessary to show that a
doctor is a graduate from an institution of
learning in order to qualify him as an expert.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2343, 2344, 2347.]

11. EVIDENCE ☞471(3) — CONCLUSIONS OF
WITNESS.

Plaintiff's testimony that he could not get
any responsible person to be with him during ill-
ness for less than $2 per day was not objection-
able as a conclusion.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2151, 2164.]

12. APPEAL AND ERROR ☞1045(1) — HARM-
LESS ERROR—SUBSTITUTION OF JURY PANEL.

The court had a right to direct jury panel
of one week to be substituted for that of an-
other, in view of Vernon's Sayles' Ann. Civ. St.
1914, art. 5169, giving court authority to ad-
journ jury panel for the week to any subsequent
day of the term, and where it does not appear
that defendant was injured thereby, it was not
error to refuse to quash the panel.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4124.]

Appeal from District Court, Harrison
County; H. T. Lyttleton, Judge.

Action by W. M. Clark against the South-
western Telegraph & Telephone Company.
Judgment for plaintiff, and defendant ap-
peals. Affirmed. On motion for rehearing,
findings of fact modified, but former opinion
sustained.

Brown & Hall and R. A. Sexton, all of
Marshall, and Young & Stinchcomb, of Long-
view, for appellant. S. P. Jones and T. P.
Harte, both of Marshall, for appellee.

HODGES, J. This appeal is from a judg-
ment in favor of the appellee for $23,000 as
damages for personal injuries. On May 4,
1915, the appellee was a brakeman in the
service of the Kansas City Southern Rail-
way Company, and was a member of a crew
operating a freight train between Port Ar-
thur, Tex., and Leesville, La. As the train
passed through the town of Hartsburg, going
north, and while the appellee was walking
on top of the cars, going toward the front
end, he came in contact with the telephone

wires belonging to the appellant and received the injuries for which he sues. According to his own testimony and that of another brakeman, who witnessed the accident, the appellee was on a furniture car and was struck by the wire just below the nose. As a result of the collision he was thrown and rendered unconscious, and remained in that condition for some time afterward. It was shown by the evidence that some five or six years prior to that time the appellant had strung two wires across the railway track at that point. They were attached to a pole on the east side of the railway right of way, and extended across the track a short distance to a building.

The conduct complained of is (1) that the appellant negligently placed and constructed, or permitted to be placed, a telephone line or wire across the railway tracks so low that it caught the plaintiff on the face, knocked him down, and caused his injuries; and (2) that the appellant negligently permitted the wire to remain across the track of the railway company, and so near the track that it caught the plaintiff in the face, knocked him down, and caused his injuries. The appellant introduced evidence showing that the wires were reconstructed in January preceding the date of the injury, and were placed 22½ feet above the rails of the railway. The height of an ordinary box car was shown to be from 12 to 14 feet, and that of a furniture car from 1 to 2½ feet higher. The appellee was over 6 feet tall, and at the time this injury occurred was walking on top of a furniture car while the train was moving at about 25 miles per hour. The testimony was somewhat conflicting as to the distance the wires were from the ground; one witness placed them about 8 feet above the top of an ordinary box car. After the injury an examination of the wires was made, and it was found that one of them was broken and the other was considerably sagged.

[1, 2] The first assigned error is the refusal of the court to give a peremptory instruction in favor of the appellant. This assignment is based upon the proposition that the evidence was insufficient to support a finding of negligence in either of the respects alleged in the appellee's petition. It is contended that the appellee had the burden of proving one of the following facts: First, that the line as constructed was placed at too low an elevation to permit the free and unobstructed use of the railway train by brakemen in the performance of their duties; or, second, that it was permitted to remain in that condition. In acquiring easements for the construction and operation of railways, such corporations are entitled to so much of the space above the territory appropriated as may be necessary for the use and enjoyment of their franchises. That space is as much a part of the railway right of way as the ground which it covers. The telephone companies have no right to invade that zone in placing wires across the tracks, without the consent of the railway company whose property is affected, or by legal condemnation proceedings. In the absence of a right to share this space, it was the duty of the appellant, in placing its wires across the track at the point where the injury occurred, to put them at an elevation which would allow the unobstructed use of the railway right of way for all legitimate railway purposes. That elevation could be determined only by taking into consideration the general and probable uses essential to railway operation. 1 Joyce on Electricity, §§ 409 and 419. To arbitrarily go below that altitude would be an unlawful invasion and obstruction of the railway right of way.

[3-5] The averments of the plaintiff upon which the case was tried do not charge that the wires were improperly secured in position, but that they were wrongfully placed and wrongfully permitted to remain at an elevation so low as to interfere with the appellee in the legitimate performance of his duties as a brakeman. The reply of the appellant to this accusation is a denial, and an averment that the wires were properly elevated. There was no pleading or proof that the railway company had consented that the wires might be placed at any particular elevation, or that any such right to do so had been acquired by condemnation proceedings. Since there is no attempt to justify an encroachment upon the space to which the railway company had the exclusive right, the issue of fact is narrowed to this: Was the evidence sufficient to prove that the appellant *had* encroached? The duty of the telephone company, when occupying its own zone above that of the railway right of way, is similar to that of a tenant of an upper story of a building. It is required to use its property so as not to unnecessarily and injuriously interfere with the right of the tenant below, and is to be held responsible for any damages which resulted from a negligent failure to so use it. That the wires were within the railway zone at the time the injury occurred is evidenced by the fact that the appellee came in contact with them; for, had they been beyond it, there would have been no collision. That fact, standing alone, and without any accompanying circumstances tending to show that this condition was not the normal status of the telephone lines, would support an inference that the wires were placed and maintained in that situation. Mr. Thompson in volume 6, § 7643, of his work on Negligence, says:

"The plaintiff in an action for personal injuries is not deprived of his right to rely upon the doctrine of res ipsa loquitur by reason of having averred the particular act of negligence complained of, where such act is the one which the legal inference of negligence tends to establish."

[6] The jury had a right to infer negligence from an unauthorized invasion of the railway right of way. In addition to this

circumstance there was other evidence tending to show that the wires had been permitted to remain at too low an elevation to allow the unobstructed operation of the cars. One of the witnesses testified that he saw the wires some time prior to the accident, and they were not more than 8 feet above an ordinary box car. If we add to the height of an ordinary box car the additional height of a furniture car, the space left was not sufficient to permit a man 6 feet tall to pass under the wires while standing erect. We conclude, therefore, that the evidence was sufficient to support the finding of the jury upon these issues of fact. 2 Joyce on Electricity, § 1038. This disposes of other assignments involving the same proposition.

[7] The appellant objects to that portion of the court's general charge wherein he instructs the jury that the appellee had the right to assume that there were no wires across the track with which he would come in contact, unless he knew of such wires, or in the exercise of ordinary care in the discharge of his own duties would have ascertained their presence; that in determining whether or not the plaintiff was guilty of contributory negligence the jury should take into consideration the character of the work in which he was engaged, and all the surrounding circumstances in connection with his duties. It is contended that this portion of the charge was upon the weight of the evidence in two respects: (1) In telling the jury what the appellee might assume as to the condition of the right of way; and (2) in authorizing the jury, in passing upon the issue of contributory negligence, to take into consideration the character of the work in which the appellee was engaged. This charge, of course, applies only to the issue of contributory negligence. The appellee testified that he did not know that the wires were across the track until he was struck; that the train on which he was traveling was running at the rate of about 25 miles per hour. While the court charged on contributory negligence, there was no evidence from which such negligence could be inferred. We think, however, that, even if the issue of contributory negligence had been presented, the charge referred to was not subject to the objections named.

[8] A number of special charges were requested and refused, some of them relating to the issue of contributory negligence, and others presenting in different forms the principal issue of negligence on the part of the appellant. Those charges have been carefully examined, and we conclude that whatever of merit any of them possesses is included in the court's general charge.

The principal injury of which the appellee complains is a disease of the eyes known as choroiditis. He testified that he had lost the sight of one eye entirely, and could see but little with the other. The testimony of physicians and the circumstances following the accident tend to show that this disease was the direct result of the injury he sustained. There was other evidence, however, to the contrary, some of which tended to show that this loss of the eyesight was due to another disease. Upon the issue of damages the appellant requested the following special charge, which was refused:

"You are instructed that, if you find from the evidence that the plaintiff had a disease of the eye or eyes before the date of the alleged accident, and that the accident did not injure his eyes, the defendant would not be liable for the condition of his said eyes."

That question was, we think, fully covered by the court's general charge.

[9, 10] Dr. Robert Fagan, an oculist, of Memphis, Tenn., testified in behalf of the appellee by deposition. His testimony was objected to upon the ground that it was not shown that he was an expert. The testimony of two witnesses that they had known Dr. Fagan for several years, and that he had the reputation of being a first-class eye specialist, was admitted over the objection of the appellant. Dr. Fagan himself testified that he was an oculist, and had been engaged in that profession about eight years. This, we think, was sufficient to authorize the court to admit his testimony as an expert. The objection seems to be based upon the absence of evidence that Dr. Fagan was a graduate of an institute of learning. Proof of that fact is not in every instance essential to show that the witness is an expert.

[11] The action of the court in permitting the appellee to testify that he could not get any responsible person to be with him during his illness for less than $2 per day is complained of. The objection is based upon the proposition that this was a conclusion of the witness. The objection is untenable, and the assignment is overruled.

The objections to the charge of the court on the measure of damages are without merit.

[12] The record shows that, before announcing "Ready for trial," the appellant made a motion to quash the panel of jurors summoned for the week during which this trial took place. It also appears that by direction of the court the jurors drawn for one week were substituted for those of another week, and that the jurors who tried this case were taken from the panel that had been drawn for the week before. Article 5169, Vernon's Sayles' Statutes, confers upon the court the authority to adjourn the entire jury panel for the week to any subsequent day of the term. There is nothing in the record tending to show that the appellant was forced to take any individual juror over a personal objection, or that any injury resulted from the refusal of the court to quash the panel. The court properly overruled the motion. Howard Oil Co. v. Davis, 76 Tex. 630, 13 S. W. 665; G., H. & S. A. Ry. Co. v. Worth, 53 Tex. Civ. App. 351, 116 S. W. 365; Freeman v. Wilson, 149 S. W. 416.

There are other assignments, complaining that the verdict was excessive, and of misconduct of the jury, all of which have been examined and carefully considered.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant has filed this motion for rehearing, and to correct certain findings of fact. It is urged that there· was no evidence to support our finding that the appellee was over 6 feet tall, or that furniture cars are from 1 to 2½ feet higher than ordinary box cars. These statements in the original opinion were based upon statements made in the brief of the appellee. They were accepted as correct, in view of the fact that they were not contested in the oral argument made by counsel for appellant in the original presentation of this case. At the instance of the appellant we now modify our finding in the two respects mentioned. There was no testimony showing how tall the appellee was. The testimony quoted by the appellant in its motion shows that box cars are from 12 to 14 feet high, and that furniture cars range from 1½ to 2 feet higher than ordinary box cars. This modification in the findings of fact is not regarded as sufficient to change our conclusions of law heretofore announced. Whatever may have been the height of furniture cars, or the height of the appellee, the evidence is conclusive that the wire was sufficiently low to come in contact with and injure him in the manner described in his petition. There is no evidence that this condition of the wire was brought about by any occurrence over which the appellant had no control.

The motion to correct findings of fact is granted, but the motion for rehearing is overruled.