**POIS et ux. v. SHARMAN et al.   (No. 3389.)**

Court of Civil Appeals of Texas. Texarkana. May 27, 1927.

Rehearing Denied June 9, 1927.

1. **Dedication ⬚53—Streets dedicated to public use and accepted could be occupied by county without any proceedings, and dedication could be asserted in denial of compensation therefor.**

If streets are dedicated to public use, and dedication is duly accepted, county may open streets, occupy and maintain them without any proceedings, and commissioners as county authorities could assert prior dedication to public use as an easement for highway that had already passed in denial of claim for compensation for land taken.

2. **Dedication ⬚53—Common-law dedication passes easement in land to public use, precluding owner from resuming right of private property.**

Common-law dedication, when complete, passes easement in land operating to preclude owner from resuming right of private property or any use inconsistent with public use.

3. **Eminent domain ⬚195—Issue in condemnation proceeding is compensation for parting with property; landowner's title being assumed (Rev. St. 1925, art. 3269).**

Condemnation proceeding assumes landowner's conceded right of title, and is framed solely to ascertain his just compensation for parting with it, in view of Rev. St. 1925, art. 3269.

4. **Dedication ⬚15—Dedication of road as public highway is question of intention.**

Whether one has dedicated road to use of public as highway is question of intention.

5. **Dedication ⬚12—Only owner in fee can dedicate land to public use.**

Dedication of land for public use can only be made by owner of land in fee.

6. **Dedication ⬚15—Intention to dedicate land to public may be shown by unequivocal acts and words, and must clearly appear.**

Intention to dedicate land to public use must clearly appear, and may be shown by words or acts unequivocal and without ambiguity.

7. **Dedication ⬚44—Evidence held to show intention by owner to dedicate streets on original map for public use, though owner did not know of recording of map.**

In suit for wrongful entry and trespass on plaintiffs' land in laying out public road, evidence *held* to show that owner of land intended to dedicate ground represented as streets on original

map that was executed for public use, and that she consented to platting of her property on such map, though owner did not know of recording of plat containing declaration of dedication.

**8. Dedication ⊂⟫19(5)—Plat of lands in lots and streets and sale of lots abutting on streets held incipient "dedication" of streets to public.**

Laying out of lands in lots and streets, and making plat and sale of lots abutting on streets, constitute an incipient dedication thereof to public under implied covenant that all persons may use street.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

**9. Dedication ⊂⟫34—Ground dedicated for street need not be used therefor within any limited time, but acceptance may be made within reasonable time before offer to dedicate is revoked.**

It is not essential that ground dedicated to public for street should be used for that purpose within any limited time, in absence of any condition to that effect, but acceptance is in time if made at any reasonable time before offer to dedicate is revoked.

**10. Dedication ⊂⟫38—Owner of one of two recorded plats could not retract dedication of streets running through both plats after acceptance by county by not selling lots in her tract.**

Where two tracts were platted as single addition and placed on record, with declaration that streets thereon were dedicated to public, and county authorities accepted dedication by working streets, owner of one plat could not thereafter retract dedication of streets running through both tracts by not offering for sale any lots on her separate tract.

**11. Dedication ⊂⟫51—Extent of dedication of street in recorded plat could not be diminished.**

Where plat of tract recorded and containing declaration of dedication of streets therein showed only straight 40-foot street, county authorities and purchasers were entitled to enter on and use streets to extent of right granted, and such right could not be limited to 24 feet.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by M. E. Pois and wife against W. G. Sharman and others, in which defendants filed a cross-action. From the judgment, plaintiffs appeal. Affirmed.

The appellants, husband and wife, filed suit against the county judge and the members of the commissioners' court of Harris county and L. J. Mendall and five other persons, claiming wrongful entry and unlawful trespass by the defendants upon certain described land owned by the plaintiffs, in undertaking to lay out and grade a public roadway, with ditches on each side, across the property. Damages are sought for injury done to the land. Also a temporary restraining order was prayed for restraining defendants from further proceeding towards laying out the roadway. The temporary injunction was granted by the judge as prayed for. In their answer the defendants denied the allegations of the plaintiffs, and averred that the property was a public street, duly dedicated as such, and that they were duly authorized by Harris county to enter upon and use the street. The plaintiffs denied the dedication and the authority of the county to use the property as alleged. Thereafter, on April 24, 1925, all the parties to the suit entered into a written agreement, agreeing "that the county of Harris has the legal right to condemn the property sought to be taken in the original petition of condemnation, and that the defendant, in lieu of further condemnation proceedings in the county court, may reconvene in this cause, and that damages may be assessed for the taking of land such as required by the county for the road."

The agreement was seemingly made under article 3269, R. S., which provides as follows:

"When those having the right of eminent domain are sued for property or for damages to property occupied by it for the purpose for which it has the right to exercise such power, the court in which such suit is pending may determine all matters in dispute between the parties, including the condemnation of property, upon petition or cross-bill asking such remedy by defendant, but the plea for condemnation shall be admission of the plaintiff's title to such property."

Although the agreement extended to "including the condemnation" of the land, yet it was conditioned upon the stipulation that the court determine "the matters in dispute between the parties." According to the agreement, "the matters in dispute between the parties," aside from the amount of damages, were:

(1) By the plaintiffs:

"That the county has no legal right to take or use for a roadway without compensation those portions of Emma avenue and Harty street lying between lot 14 in block 8 of Sapp Gardens, and the south end of Harty street, where it intersects Elizabeth avenue; that the supposed dedication of Sapp Gardens is ineffectual as to Mrs. Pois, and that the county must compensate Mrs. Pois, not only for that portion of lot 14, block 8, proposed to be taken, but also for all parts of any streets outlined on the map of Sapp Gardens; that, if it be held that the county was entitled to the streets, it be confined to a width of 24 feet, and that all outside of 24 feet width should be paid for, as well as resulting damages to the whole tract by reason of more feet being taken, otherwise no damages to be assessed."

(2) By the defendants:

"That damages will be assessed only for the taking of a part of lot 14 in block 8," and that

the county had the right to enter upon and improve as a roadway, without necessity of compensation, Emma avenue and Harty street, as the same were dedicated irrevocably to public use as streets by a subdivision and plat of record, with the knowledge, acquiescence, and consent of plaintiffs.

The main point of contention was as to whether the streets named and proposed to be graded and used as a public highway had been devoted to public use by Mrs. Pois, the owner of the land. In this connection it admittedly appears that on July 2, 1914, H. T. Sapp, father of the plaintiff Mrs. Pois, platted a tract of land into lots, blocks, and streets, and duly recorded the plat in the records of the county clerk of Harris county. The subdivision was denominated "Sapp Gardens," and was situated about 3½ miles north from the county courthouse and outside the city limits of Houston. The following recital appears on the plat:

"I, H. T. Sapp, the owner of the subdivision shown on the above map, do hereby dedicate to public use the streets shown thereon."

As an admitted fact, H. T. Sapp did not have title or interest in as much as 7½ acres of the land so subdivided and platted. A large part of the land was exclusively owned by Mr. Sapp. Mrs. Pois had title, and exclusively owned at the time and prior thereto, in her separate right, all of 7½ acres located on the west end of the subdivision, and on which are located blocks 5, 6, 7, 8, and 9 and "Emma avenue," a street "40" feet wide, running north and south, and a portion of "Harty street," a street "40" feet wide, running east and west from Emma avenue to Elizabeth avenue, which latter avenue is within the platted subdivision. As testified by Mrs. Pois, Mr. Sapp included her property in the subdivision and plat with "my consent." Other circumstances are set out below.

In accordance with the agreement above, on January 5, 1926, the day the case was regularly called for trial, the defendants amended the original answer, and filed a cross-action, alleging, as material, as follows:

"That heretofore, on ——— day of July, 1914, H. T. Sapp, with the knowledge, if not the consent, of plaintiff Mrs. Pois, placed on record a plat of a subdivision known as Sapp Gardens, by which certain acreage owned by Mrs. Pois and others was cut up into lots, blocks, and streets laid out to furnish access to the owners of the lots in said addition. That said plat had the legal effect of dedicating to the public use all streets and avenues thereon, including Emma avenue and Harty street; that said plat was placed of record, either with the knowledge and consent of the plaintiff Mrs. Pois, or that after it was placed on record by H. T. Sapp, or others, she recognized the same, and acquiesced in it, and sold lots with reference to said map and dedication, and that she is now estopped to deny that she authorized the recording of said plat or the dedication of said streets, and that

all of the streets in the addition, and especially Emma avenue and Harty street, are now dedicated to public use; that the county has the right to open them and to use them for public purposes; that Harty street has been for a great many years opened in whole or in part and used by the public; that in accordance with law the county of Harris is proceeding to open up a road running from Houston avenue extension south to Emma avenue, thence continuing down Harty street to Elizabeth avenue as per the sketch attached; that the property owners, with the exception of Mrs. Pois, have furnished the right of way for such road, but that a portion of lot 14 in block 8 of Sapp Gardens addition lies immediately between the donated strip and Emma avenue and Harty street, which are public roads."

The prayer was "to fix and award the plaintiff's damages for a strip of 40 by 100 feet on the west end of lot 14 in block 8, and to deny compensation for the special streets named," or, in the alternative, that—

"if the court should determine that the county is not entitled to use any portion of the said streets for road purposes, then that damages be assessed for the entire strip in suit, including the west 40 by 100 feet of lot 14, block 8, and the intersection of Emma avenue and Harty street and all that portion of Harty street lying between Emma avenue and Elizabeth avenue," etc.

The plaintiff Mrs. Pois replied to the cross-action, denying that the subdivision was laid out and platted and recorded with her concurrence, and that there was subsequent action on her part of acquiescence or conduct showing an intention to dedicate or devote the land in suit to the public use. The replication further set out that the roadway proposed to be graded had been extended by the defendants to a width to include and to deny plaintiffs the right to have any sidewalks in front of the lots.

After hearing the evidence, the court submitted to the jury the following special issues:

"(1) Q. What amount of money paid now will compensate plaintiffs for the taking by the county of 40 by 100 feet of lot 14, block 8? Answer of Jury: $200.

"(2) Q. What, if any, damages do you find from the evidence the plaintiffs will suffer to the balance of their property by virtue of the opening of the road? Answer of Jury: None.

"(3) Q. How much benefits, if any, will accrue to the balance of plaintiffs' property by virtue of the opening of the road? Answer of Jury: $137."

The court concluded as a matter of law, as recited in the judgment, as follows:

"And the court finds from the evidence that heretofore by and with the consent of the plaintiffs an addition known as Sapp Gardens addition had been created by which there was laid out certain streets for the use of the public, including Harty street, and that there exists no necessity for condemning or acquiring any more property than the west 40 by 100 feet of

lot 14, block 8, Sapp Gardens addition, all other streets, including Harty street, having been irrevocably dedicated to the public."

In keeping with such conclusion and the verdict the court entered judgment, omitting formal parts, as follows:

"It is therefore ordered, adjudged, and decreed that the defendant the county of Harris recover of and from .the plaintiffs Mrs. M. E. Pois, joined pro forma by her husband, the right of way and easement in and to the west 40 by 100 feet of lot 14, block 8, Sapp Gardens addition, to be used as a public road. It is ordered, adjudged, and decreed that the plaintiff Mrs. M. E. Pois do have and recover of and from the county of Harris the sum of $200 in full settlement of all damages by virtue of the taking or appropriating right of way across the west 40 by 100 feet of lot 14, block 8, Sapp Gardens addition, together with all other damages incident or appertaining to the remaining property of the said M. E. Pois."

J. M. Gibson, of Houston, for appellants.
Amerman & Sears, of Houston, for appellees.

LEVY, J. (after stating the facts as above). [1-6] The main question involved in the case is whether there was a dedication and acceptance of the premises, aside from lot 14 in block 8, to the public use of a street. If the particular streets were in truth dedicated to the public use, and that dedication was duly accepted, then the county of Harris, through the commissioners, was at liberty to open the streets, and occupy and maintain them, without any proceedings whatever, because simply engaged in regulating and improving streets belonging as such to the county. And the commissioners, as the county authorities, could assert such prior completed dedication to the public use, as an easement for a highway that had already passed, in denial of the plaintiff's claim of compensation therefor. A common-law dedication, when complete, passes an easement in the land, operating to preclude the owner from resuming his right of private property or any use inconsistent with the public use. Thus the question does not necessarily become one of condemnation only, but of title, for a condemnation proceeding assumes the landowner's conceded right of title, and is framed solely to ascertain his just compensation for parting with it. The facts of the present case are without dispute, and the decision of the question depends upon the legal effect attaching to such facts. Whether one has dedicated a road to the use of the public as a highway is a question of intention. Lamar County v. Clements, 49 Tex. 347; Wolf v. Brass, 72 Tex. 133, 12 S. W. 159. A dedication can only be made by the owner of the land in fee, and the intention to dedicate must clearly appear, though such intention can be shown by words or by acts unequivocal and without ambiguity. As appears, two adjoining parcels of land were subdivided into numbered lots and blocks with intersecting streets, and were accordingly platted, which plat was duly recorded. The parcels were. owned in severalty by Mrs. Pois and her father, H. T. Sapp. The two owners, as appears, mutually agreed to unite the two parcels into the subdivision, or arrangement of lots and blocks with intersecting streets, and to plat the same, as an undertaking projected for the mutual benefit of both of them. Mrs. Pois admits as a fact that the inclusion within the subdivision of her parcel of 7½ acres of the original Totten land, as well as the platting of it as an addition, was with her concurrence and consent. She testified:

"I consented to my father platting my Totten property on that map. * * * I let him include it in his. * * * He platted with my consent the Totten property and his property."

And Mrs. Pois does not contend in the present suit that the laying out of her 7½ acres into lots, blocks, and streets, so as to constitute a part of "Sapp Gardens addition," and "the platting" of it at the outset, was without her consent and concurrence. She merely claims that her father "put it (the plat) on record without my knowledge," and that, "so far as dedicating any streets to the county or for public use, I didn't know my father did it." This testimony is not inconsistent with her admission that she had consented to "the platting" of her land. She meant to be understood as only denying that she knew of the plat's being placed "on record" and of the following words appearing on the recorded plat:

"I, H. T. Sapp, the owner of the subdivision shown on the above map, do hereby dedicate to public use the streets shown thereon."

[7] And it is not controlling as a fact that Mrs. Pois did not know of "the recording" of the map that was executed, or that the original map did not have thereon the special words of her father. The acts of Mrs. Pois outside of the record of the plat go conclusively to show an intention to dedicate the ground represented as streets on the original map that was executed 'for public use. She admitted that, since the making of the subdivision and the platting of it, and in recognition of its reality, she has bought and sold lots "east of Lula street" according to the plat of the subdivision; quoting from her testimony:

"I sold some property in Sapp Gardens to Mrs. Ivey. I sold her two lots that were deeded to me after my father's death by my mother. One is lot 8 in block 3, and the other is lot 6 in block 3; both of those are in Sapp Gardens. My mother conveyed to me lots 6, 7, and 8 in block 3, and also lots 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 in block 2, and lot 7 in block 1 all in Sapp Gardens. They were deeded to me in settlement of the estate. I placed those deeds on record. On November 16, 1917, my father and

my mother conveyed to me twelve lots in block 4 in Sapp Gardens. * * * I recognize the right of Mrs. Ivey to use Harty street from Lula avenue east. I admit that the people to whom I have sold in that addition have the right to use Lula avenue and the part of Harty street east of Lula avenue. I contend that the balance of Harty street is mine. All these conveyances that I have made were east of Lula avenue, and (such property) was acquired from my father's property. I recognize that my father had the right to put the plat on record so far as his property was concerned. He had platted it when I acquired from him the lots east of Lula avenue. All the sales I have made have been in that part of my father's property. None of my Totten property has been offered for sale."

[8-10] The deed from H. T. Sapp and wife to Mrs. Pois, dated July 13, 1916, and filed for record July 18, 1916, describes the lot as "of Sapp Gardens addition" and "beginning on the east of Lula avenue" and fronting "west of Lula avenue." The general warranty deed from Mrs. Pois to Mrs. Ivey, dated March 26, 1923, conveys "lot 6 in block 3 in what is known as the Sapp Gardens addition to the city of Houston as shown by the plat recorded in plat records of Harris county, said lot fronting on Lula avenue, Sapp Gardens addition." In such circumstances the intention of Mrs. Pois is evident to sanction and adopt the making of the subdivision as a whole, and of the map or plat of it. The deeds made to her and by her referred to the designated lots and blocks in describing the property, manifesting her acquiescence and recognition of the subdivision and plat as Sapp Gardens addition, and giving assurance that the ground, as so platted, shall remain intact. The laying out of lands in lots and streets, and making a plat, and the sale of lots abutting upon such streets, constitute an incipient dedication of them to the public. There is an implied covenant, not merely that such purchasers shall have a right of way over the street upon which the granted ground is situated, but that all persons may use it. It is not essential that the ground dedicated to the public for a street should be used for that purpose within any limited time, in the absence of any condition to that effect. Acceptance is in time if made at any reasonable time before the offer to dedicate is revoked. And acceptance by the proper county authorities is plainly established in the case. The appellant seems to contend that, although the dedication was complete as to her father's portion of the addition, yet it was ineffectual as to her portion lying west of Lula evenue. It is rested upon her evidence that "All of these conveyances I have made were east of Lula avenue, and was the property acquired from my father. I recognize that my father had the right to put the plat on record so far as his property was concerned. None of the property

which I acquired from Totten has been offered for sale." The mere fact that Mrs. Pois retained and did not offer for sale any of her lots on her separate tract did not operate to be a revocation pro tanto of the dedication as originally made. The two tracts were platted as one undertaking, "Sapp Gardens addition." Lula avenue and Harty street were laid across both tracts for the benefit of both tracts, and were intended to be permanent. They were intended as a common passageway for all the lots as a whole. The location of the addition as a whole, the number and extent of the streets, and the belief of the purchasers that they will remain permanent and perpetual, were material inducements to the purchase. There is no pretense that she timely, or at all, changed the plat by discontinuing the streets, or that the purchasers of the other lots and the county authorities acquiesced in a revocation of the dedication originally made. The proper county authorities had duly accepted the Emma avenue and Harty street by working on them as early as 1917. Dozier v. City of Austin (Tex. Civ. App.) 253 S. W. 554. She was cut off from subsequent retraction in virtue of the facts.

[11] The plat shows nothing more than a straight 40-foot street. Therefore, the contention that there should be a limitation of the right granted to 24 feet cannot be supported. The county authorities, the same as the purchasers, were entitled to enter upon and use the streets to the extent of the right granted.

We have duly considered all the assignments of error, and have concluded that each one of them should be overruled.

The judgment is affirmed.