FOURT, J.
 

 This is an appeal from a judgment awarding
 

 appellant nominal damages in the sum of $1.00 in an inverse condemnation action. The cause was heard by the trial court sitting without a jury. Appellant has appealed from that part of the judgment which awarded to it only nominal damages.
 

 A résumé of the facts is as follows:
 

 By an oil and gas lease dated January 31, 1940, one O. J. Rohde became the lessee with certain rights. The pertinent provisions of the lease are set forth as follows:
 

 “Witnesseth: . . . The lessor . . . does lease, let and demise unto the Lessee, its successors and assigns, the land and premises hereinafter described, with the sole and exclusive right to the Lessee to drill for, produce, extract, take and remove oil, gas, asphaltum and other hydrocarbons (and water without cost for its operations) from, and to store the same upon, said land during the term hereinafter provided, with the right of entry thereon at all times for said purposes, and to construct, use, maintain, erect, repair, and replace thereon and to remove therefrom all pipe lines, telephone and telegraph lines, tanks, machinery, buildings and other structures (excepting refinery)
 
 which the Lessee may desire in carrying on its business and operations on said
 
 land, with the further right to the Lessee or any of its subsidiaries to erect, maintain, operate and remove a plant with all necessary appurtenances, for the extraction of gasoline from gas produced from said land including all rights necessary or convenient thereto, to
 
 *95
 
 gether with rights-of-way for passage over, upon and across, and ingress and egress to and from, said land, for any or all of the above mentioned purposes.
 
 The possession by the Lessee of said land shall be sole and exclusive, excepting only that the Lessor reserves the right to occupy said land, or to lease the same for agricultural, horticultural, or grazing uses, which uses shall be carried on subject to, and with no interference with, the rights or operations of the Lessee hereunder. . . .
 
 (Emphasis added.)
 

 ii
 

 “To Have and to Hold the same for a term of twenty (20) years from and after the date hereof and
 
 so long thereafter as oil or gas,
 
 or casinghead gas, or other hydrocarbon substances, or either or any of them,
 
 is produced therefrom in paying quantities. . . .
 
 (Emphasis added.)
 

 i t
 

 “11. There is hereby expressly reserved to the Lessor, and as well to the Lessee, the right and privilege to convey, transfer or assign in whole or in part its interest in this lease or in the leased premises or in the oil and/or gas therein or produced therefrom, . . .
 

 Í {
 

 “27. Lessee may at any time
 
 quitclaim
 
 this lease in its entirety
 
 or as to part of the acreage covered thereby, . . .
 
 Except as so provided, full right to the land so quitclaimed shall revest in Lessor, free and clear of all claims of Lessee, . . . (Emphasis added.)
 

 it
 

 “29. This lease and all its terms, conditions and stipulations shall extend to and be binding upon the . . . grantees, successors and assigns of the parties hereto.”
 

 By an assignment dated April 10, 1940, the rights of the lessee, Rohde, under said oil and gas lease as to a part of the lands covered thereby were transferred by Rohde to appellant, Federal Oil Company, hereinafter referred to as Federal. Subsequently, certain of the lands covered by the lease as so assigned were quitclaimed by Federal to the original lessor, releasing them from said lease. The leasehold rights so assigned to Federal and not subsequently so released are hereinafter referred to as the “Rohde lease.”
 

 The Rohde lease covers approximately 12 acres. Said land is traversed in a generally north-south direction by Jefferson Boulevard, a major street in the county of Los Angeles. All of the land covered by the Rohde lease lies to the east of Jefferson
 
 *96
 
 Boulevard except Parcels 2 and 3, hereinafter referred to as “subject land.” Parcel 2 consists of approximately .73 of an acre and Parcel 3 approximately 1.2 acres. The subject land lies on the westerly side of and abuts upon Jefferson Boulevard and the parcels are contiguous to one another.
 

 The portion of the land under the Rohde lease situated east of Jefferson Boulevard is in unincorporated county territory. The subject land was, on March 19, 1957, the date to which valuation in this case relates, and at all times thereafter has been, within the corporate limits of the city of Culver City.
 

 In December, 1940, respondent purchased Parcel 2 of the subject land, and in December, 1952, the city acquired the other portion of the subject land (i.e., Parcel 3).
 
 The title acquired by the city in each instance was subject to appellant’s Rohde lease.
 
 The estate or interest of Federal in and to the surface of the subject land, on March 19, 1957, and at all subsequent times, consisted of the rights accorded by the Rohde lease to the lessee and his assigns to make use of the surface of the land covered by the Rohde lease, including the right to drill for, process and store thereon gas, oil and other hydrocarbons
 
 produced from, any part of the Rohde lease.
 
 The total purchase price paid by respondent was $19,500.
 

 Commencing in 1947, the city began to use the surface of Parcel 2 for municipal purposes in connection with its city yard, and constructed improvements on Parcel 2. After October 28,1952, similar uses were made by the city on the surface of Parcel 3. By March 19, 1957, all of the surface of the subject land had been put to permanent municipal uses by the city. At no time up to 1957 had Federal ever used the surface of the subject land.
 

 On or about March 19, 1957, Federal notified the city that Federal then needed the surface use of the subject land and demanded that the city cease its use thereof and deliver possession to Federal. The city refused and on March 25, 1957, the city council adopted a resolution finding that the public interest and necessity required acquisition by the city of the
 
 surface rights
 
 in and to said property. Thereafter, the city commenced an action in the superior court to condemn the surface rights in the subject land. The city abandoned and dismissed that action prior to trial.
 

 On February 7, 1958, Federal gave the city written notice to cease its use of the surface of the subject land and to deliver possession thereof to Federal. The city again rejected the demand. A formal claim for damages was then filed with the
 
 *97
 
 city, and this too was rejected. Federal, on May 20,1958, filed this action in inverse condemnation.
 

 Only one issue is presented on this appeal, to wit: Is Federal entitled to nominal damages only,
 
 where the surface of the property
 
 is appropriated for a public use by a municipality that has acquired the reversionary right to the property subject to Federal’s interest?
 

 It should be emphasized at the outset that the only right taken is the surface right; Federal’s
 
 profit a prendre
 
 remains unimpaired. Federal’s interest in the surface of the subject property is derived solely from the lease. While by the terms of the lease, Federal has the “sole and exclusive” right to possession with certain reservations in the lessor, said “sole and exclusive” right to possession is for a limited purpose only, to wit: Utilization of its
 
 profit a prendre.
 
 The fact that the surface of the subject land has value for purposes other than those associated with the
 
 profit a prendre
 
 is immaterial insofar as the amount of compensation to which Federal is entitled for the loss of its rights.
 

 The evidence showed without question that the same oil and gas underlying the property in question could be removed by Federal now or in the future as could have been removed before the city preempted the surface rights of the property in question and that such oil could be removed at no economic damage to Federal because of the peculiar circumstances of this case.
 

 The yardstick used to ascertain the amount of compensation due in an “inverse condemnation” action is precisely the same as that used in the normal condemnation action. The test is set forth in
 
 People
 
 v.
 
 LaMacchia,
 
 41 Cal.2d 738 [264 P.2d 15] wherein it is stated at page 751 that;
 

 “This court ‘has definitely aligned itself with the great majority of the courts in holding that damages must be measured by the market value of the land at the time it is taken, . . . the test is . . . the fair market value of the land in view of all the purposes to which it is naturally adapted; . . .’
 
 (.Sacramento etc. R. R. Co.
 
 v.
 
 Heilbron,
 
 156 Cal. 408, 412 [104 P. 979].) ‘In ascertaining the market value of real property any evidence which tends to show the physical condition of the property, the purpose for which it is employed, or any reasonable use for which it may be adapted, is competent. ’
 
 (City of Los Angeles
 
 v.
 
 Cole,
 
 28 Cal.2d 509, 518 [170 P.2d 928], quoting with approval from
 
 City of Beverly Hills
 
 v.
 
 Anger,
 
 127 Cal.App. 223, 228 [15 P.2d 867].) ”
 

 
 *98
 
 As stated in
 
 County of Los Angeles
 
 v.
 
 Pan American Development Corp.,
 
 146 Cal.App.2d 15 [303 P.2d 61] at page 19:
 

 “Market value is ‘the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable. ’
 
 {Sacramento etc. R. R. Co.
 
 v.
 
 Heilbron,
 
 156 Cal. 408, 409 [104 P. 979].)”
 

 Federal’s contention that it is entitled to the present market value of
 
 its right to surface possession
 
 is correct. However, there is a fallacy in appellant’s further contention that this value is the market value of the “best use” of the surface rights. This erroneous position is apparently caused by a failure to differentiate between two separate and distinct issues. The issue of market value of the “best use” of the surface rights is separate from the issue of the market value of Federal’s rights to make a limited use of the surface of the subject property. In the usual situation, the city would pay the market value of the property it preempted (i.e., the market value predicated upon the “best use”), and then that sum would be apportioned among the various owners as their interests appeared. The rule is stated in
 
 People
 
 v.
 
 S. & E. Homebuilders, Inc.,
 
 142 Cal.App.2d 105 [298 P.2d 53] at page 107:
 

 “ ‘The general legal doctrine as stated by the courts is that compensation must be paid for the land that is taken, regardless of the separate interests in the land, and that the sum of the separate values of the divided interests may not exceed the value of the whole. . . .’ (Citation.)
 
 In other words, the property to be taken is valued as if owned by a single person, regardless of the separate interests therein.”
 
 (Emphasis added.)
 

 But, the case which is before us is not the usual situation. The city already owned all interests other than those owned by Federal.
 
 Therefore, the issue is solely as to the market value of Federal’s rights in the surface of the subject land.
 

 While under the terms of the lease Federal has the right to use the surface of the subject land for purposes associated with the utilization of its
 
 profit a prendre,
 
 the record discloses that there were many important restrictions upon this use. The findings referred to herein were supported by substantial evidence. Finding Number XI provides :
 

 
 *99
 
 “XI
 

 “The surface rights of plaintiff (appellant) in and to Parcels 2 and 3 under the Rohde lease on March 19, 1957, (the date of valuation) and at all times subsequent thereto, were not available for or adapted to any use for the purposes authorized by the Rohde lease because of (1) restrictions imposed on such use by governmental authority, (2) substantial additional costs that would be incurred by such use, which would be avoided by non-use with no material disadvantage to the plaintiff or its assigns and (3) the existence of public and private easements for sewer, pipe line and pole line uses to which said surface rights were subject.”
 

 Finding Number XII provides:
 

 “XII
 

 “The rights of the plaintiff
 
 in and to the surface of Parcels 2 and 3
 
 did not,
 
 on March 19, 1957, or at any time subsequent thereto,
 
 have any substantial market value independently of or separate from the right to exploit minerals therein or in the balance of the Rohde lease.”
 
 (Emphasis added.)
 

 Finding Number XIII provides:
 

 “XIII
 

 “The property of plaintiff taken by defendant
 
 City for which defendant (sic) claims compensation herein
 
 does not include any right of plaintiff to exploit the minerals in said .Parcels 2 and 3 cmd in the balance of the Rohde lease.”'
 
 (Emphasis added.)
 

 Finding Number XIV provides:
 

 “XIV
 

 “The market value of the rights of the plaintiff in and to the surface of Parcels 2 and 3 was, on March 19, 1957, and at all times subsequent thereto, the sum of $1.00.”
 
 (Emphasis added.)
 

 Federal has a compensable interest. The amount of compensation due to Federal is the market value of that which was taken from it. To award Federal more than the market value of its rights to make use of the surface of the subject land would constitute unjust enrichment. The issue of severance damages was not raised on appeal.
 

 As we view it the right to use the surface has meaning only in connection with the right to extract the minerals which underlie the surface. The surface right so granted under
 
 *100
 
 the lease could not be sold apart from the rights having to do with the minerals mentioned in the lease.
 

 The judgment is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied April 12, 1960, and appellant’s petition for a hearing by the Supreme Court was denied May 18, 1960. Dooling, J. pro tem.,
 
 *
 
 participated therein in place of Spence, J. Schauer, J., was of the opinion that the petition should be granted.
 

 *
 

 Assigned by Chairman of Judicial Council.