# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00516-CV

**State of Texas, Appellant**

**v.**

**Joe L. Ware and the Estate of Christine Ware, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. 97-09229, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

In 1968 appellant the State of Texas obtained, through the exercise of its power of eminent domain, an easement for highway right-of-way purposes over property in Travis County owned by appellee Joe L. Ware and his wife Christine Ware (the AWares@). In this subsequent action, the district court found that the State=s use of the property exceeded its easement rights and awarded $600,000 to the Wares for the State=s condemnation of their remaining fee interest in the property.[1] The State brings three issues on appeal. We will reverse the district-court judgment and remand the case.

---

[1] This action was originally filed by the Wares against the commissioners of the Texas Transportation Commission and an employee of the Texas Department of Transportation. During its pendency, Christine Ware died and her estate was substituted in her stead. As used herein, Athe Wares@ includes the Estate of Christine Ware. The Wares later added the State as a defendant. When the State counterclaimed to condemn the Wares= remaining fee interest in the property, the Wares dismissed their action against the individual defendants.

## BACKGROUND

In 1952 the Wares acquired 2.226 acres of land in Travis County fronting U.S. Highway 183. They occupied the property as their family residence until 1968. The dispute in this case revolves around two separate condemnation actions by the State. The first occurred in 1968 when the State, in a partial taking, condemned and acquired a highway right-of-way easement over the Wares= entire property. The second arises from the final judgment in the case now before this Court, awarding the State title to the property=s remaining underlying fee and damages to the Wares.

*The 1968 Taking*

In 1968 the State and Travis County brought an action in Travis County Court to condemn the Wares=property for the purpose of constructing an interchange between U.S. Highway 183 and the yet to be constructed Loop 360. *State v. Ware*, No. 602 (County Court, Travis County, Tex. Dec. 17, 1968). At the time of such action, counties held a general power of eminent domain. Act of March 7, 1948, 43rd Leg., 2d C.S., ch. 37, 1934 Tex. Gen. Laws 89, *repealed by* Act of Jan. 1, 1984, 68th Leg., R.S., ch. 576, ' 6, 1984 Tex. Gen. Laws 3729, 3730 (now codified at Tex. Prop. Code Ann. ' 21.001-.023 (West 1984 & Supp. 2002)). Condemnation proceedings by a county were required to Abe instituted under the direction of the commissioners=court and in the name of the *county*.@ Act of March 26, 1925, 39th Leg., R.S., ch. 116, 1925 Tex. Gen. Laws 300, *repealed by* Act of Jan. 1, 1983, 68th Leg., R.S., ch. 576, ' 6, 1983 Tex. Gen. Laws 3729, 3730 (emphasis added). However, if the county was exercising the right of eminent domain over land needed for state highway purposes, the land was taken in the name of the *State*. *See* Op. Tex. Att=y Gen. No. V-1282 (1951). The only authority for counties to institute such proceedings Aon behalf of the State

of Texas@ and Awith title to the State of Texas@ was found in former article 6674n, which applied only to land needed for designated state highways.[2] Act of April 2, 1925, 39th Leg., R.S., ch. 186, ' 14, 1925 Tex. Gen. Laws 458, *repealed by* Act of Sept. 1, 1983, 68th Leg., R.S., ch. 288, ' 2, 1983 Tex. Gen. Laws 1526. Under such provision, Athe commissioners=court act[ed] not for the benefit of the county but

---

[2] Current provisions for eminent domain proceedings through county commissioners court can be found in Tex. Prop. Code Ann. '' 21.001-.023.

3

as the authorizing agent of the State and institut[ed] the condemnation proceedings in the name of the State.@

Op. Tex. Att=y Gen. No. V-1282 (1951). The commissioners= court was not authorized to take the

property in fee, but could condemn only a highway right-of-way. *Id*.[3] Consequently, there could not be a

---

[3] Former Article 6674n, entitled ACondemnation of Right of Way and Materials by Commissioners= Court,@ provided:

> Whenever, in the judgment of the State Highway Commission, the use or acquisition of any land for road, right of way purposes . . . is necessary or convenient to any road to be constructed . . . in connection with the locating, relocating or construction of a designated State highway by the State Highway commission, the same may be acquired by purchase or condemnation by the County commissioners= court . . . . [T]he county in which the State highway is located may pay for same out of the County Road and Bridge Fund, or any available county funds . . . . [T]he commissioners Court may, and is hereby authorized to purchase or condemn the same, with title to the State of Texas.

Act of April 2, 1925, 39th Leg., R.S., ch. 186, ' 14, 1925 Tex. Gen. Laws 458, *repealed by* Act of Sept. 1, 1983, 68th Leg., R.S., ch. 288, ' 2, 1983 Tex. Gen. Laws 1526.

total taking of the Wares= property. Instead, the State acquired a right-of-way for highway purposes over the Wares= entire 2.226 acres.

The practical effect of the taking, however, was to deny the Wares all beneficial use of the property. The Wares agreed to a judgment awarding them $35,000. The Wares stipulated that, at the time of the taking, Joe Ware believed that all of the property was Aneeded for highway purposes and that the [taking] divested the [Wares] of all of their right, title and interest in the property.@ There is no evidence in the record before us, and the Wares do not argue, that the 1968 judgment awarded them less than the full fair market value of the property at that time. Such an award would be consistent with the taking of an easement for highway purposes. As explained by the supreme court:

> In some cases the measure of damages for the taking of an easement by condemnation proceedings is the difference in the market value of the land free of the easement and its market value burdened with the easement. If the easement leaves the landowner with some beneficial use of the land, as it does, for instance, in the case of easements for pipe lines, power lines, or other similar purposes, then the damages for the condemnation thereof, as a matter of law, will be less than the value of the fee. *A distinction must be drawn, however, between such easements and easements which deprive the landowner of any beneficial use of the land. In the latter class of easements the landowner may recover as damages the market value of the land.*

*Thompson v. Janes*, 251 S.W.2d 953, 956 (Tex. 1952) (emphasis added) (citations omitted).        At the time of the taking, the State planned to construct a Acloverleaf@ interchange at Highway 183 and the new Loop 360, with the Wares= property constituting the interchange=s southeast quadrant. At some undetermined later date, the State changed the design plan from a cloverleaf to a smaller Adiamond@ configuration, leaving 1.374 acres free from any road surface. However, the State has retained the

5

remaining property and is allowing a private highway contractor to use the portion for office space and storage. It is this part of the original property that forms the subject matter of the Wares= current complaint. The State stipulated that it has no plans to construct any roadway or roadway appurtenance within the disputed area, but still retains its easement. The State declared as surplus and reconveyed, either through sale or exchange, the unused portions of the other quadrants of the intersection.[4] However, the State denied the Wares= request that the State declare the Aunused portion@ of their land as surplus and reconvey it to them. Consequently, at all times since the 1968 taking, the State has held an easement over all of the property originally taken from the Wares.

*The Current Taking*

---

[4] The transportation code provides a process by which the State may, at its discretion, divest itself of property acquired for a highway purpose when it no longer needs it for that purpose. Tex. Trans. Code Ann. ' 202.021(a) (West 1999).

6

Not until 1996 did Joe Ware realize that the Wares still retained some ownership interest in the property. When the State refused to relinquish its easement over the portion of the property not being used for highway purposes, the Wares filed this suit originally requesting that the district court "grant Declaratory Judgment that the 1968 Easement has terminated." The Wares amended their original petition to include claims for injunctive relief and inverse condemnation. By interlocutory order, the district court found "that the State's use of the subject property has, for some time, exceeded those rights granted in the [1968] condemnation judgment so that the [Wares] are entitled to recover, in inverse condemnation, for the taking of their remaining rights in the property."[5] Significantly, the district court neither found that the State's easement had terminated nor terminated the easement. The State then counterclaimed, seeking "fee title to the entire property which is subject to the State's easement and which is the subject of this suit . . . and this Court enter its judgment determining the value of the fee title so acquired." After a jury trial, the district court rendered final judgment awarding the State title to the property and the Wares $600,000, the amount the jury found to be "the market value of the [Wares'] remaining interest in the property."[6]

The State appeals the district-court judgment by three issues, contending that the district court erred (1) in awarding the Wares more than nominal damages; (2) in applying the undivided-fee rule[7] to

---

[5] The interlocutory order was signed by Judge W. Jeanne Meurer.

[6] The final judgment was signed by Judge William E. Bender.

[7] The parties' briefs refer to the "unified fee theory" and the "unified fee rule." Case law sometimes uses one or the other of the parties' terms, but also refers to the "undivided fee rule" and the "undivided fee theory." Nichols's treatise uses the "undivided fee rule." We will use the term "undivided-fee rule."

7

arrive at the value of the Wares= remaining interest in the property; and (3) in finding that the State had exceeded its rights under the 1968 easement.

## DISCUSSION

Eminent domain has been described as "one of the inalienable rights of sovereignty. It is the power to take private property for public use." *Fort Worth & D.C. Ry. v. Ammons*, 215 S.W.2d 407, 409 (Tex. Civ. App.CAmarillo 1940, writ ref=d n.r.e.). But it is axiomatic that government cannot take a citizen=s property without payment of the property=s fair value. The United States Constitution provides that private property may not be taken for public use without just compensation. U.S. Const. amend. V. This provision is made applicable to the states by the Fourteenth Amendment, which provides that no state may deprive any person of property without due process of law. U.S. Const. amend. XIV, ' 1. The Texas Constitution likewise prohibits the State from taking private property without first paying adequate compensation to the owner: "No person=s property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, ' 17.

That the State had the right to take the original easement from the Wares and, later, their remaining interest is without dispute. The controversy this case brings to the Court involves the standard to be applied to determine the fair, just, and adequate compensation to which the Wares are entitled by virtue of the State=s decision to exercise its power of eminent domain over property owned by the Wares and subject to the State=s previously acquired easement.

8

***The Undivided-Fee Rule***

By its second issue, the State challenges the district court=s use of the undivided-fee rule as a method for determining damages in this case. Damages are measured by a legal standard that must be used to guide the fact finder in determining what sum would compensate the injured party. *Jackson v. Fontaine=s Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex. 1973). The proper measure of damages is a question of law. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.CHouston [14th Dist.] 1999, pet. denied) (citing *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 862 (Tex. App.CAmarillo 1983, no writ); *Johnson v. Willis*, 596 S.W.2d 256, 262 (Tex. Civ. App.CWaco), *writ ref=d n.r.e.*, 603 S.W.2d 828 (Tex. 1980)). When an issue turns on a question of law, we do not give any particular deference to legal conclusions of the trial court and apply a *de novo* standard of review. *Trinity Indus. Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App.CAustin 2001, pet. denied).

The undivided-fee rule provides that

> when a tract of land is taken by eminent domain, because the land itself is taken by a paramount title rather than through the separate estates of different persons having interests in the land, the compensation awarded is for the land itself and not for the sum of the different interests therein. The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates.

4 Julius L. Sackman, Nichols on Eminent Domain ' 12.05[1] (3d ed. 2001) (hereinafter ANichols@) (footnotes omitted). In Texas the rule has most often been expressed and followed when the property being taken is subject to a leasehold:

In condemnation proceedings, where there are different estates in the property or where the property is under a lease to a third party, the valuation of the various estates or leasehold interest is usually determined by ascertaining the market value of the property with the improvements thereon as though owned exclusively by one party, and, in the absence of damages to other property not taken, this ordinarily determines the extent of the liability of the party condemning the property. Such amount, when so determined, should then be apportioned among the lessee and the owners of the various estates in the land.

*City of Waco v. Messer*, 49 S.W.2d 822, 823 (Tex. Civ. App.CWaco 1932), *rev=d on other grounds*, 78 S.W.2d 169 (Tex. 1935); *see also Urban Renewal Agency v. Trammel*, 407 S.W.2d 773, 774 (Tex. 1966); *Aronoff v. City of Dallas*, 316 S.W.2d 302, 307 (Tex. Civ. App.CDallas 1958, writ ref=d n.r.e.); *Frankfurt v. Texas Tpk. Auth.*, 311 S.W.2d 261, 267 (Tex. Civ. App.CTexarkana 1958, no writ) (citing *City of St. Louis v. Rossi*, 64 S.W.2d 600, 604 (Mo. 1933)); *Reeves v. City of Dallas*, 195 S.W.2d 575, 581-82 (Tex. Civ. App.CDallas 1946, writ ref=d n.r.e).

The Wares assert that the undivided-fee rule Ahas also been consistently applied in cases involving easements and other undivided ownerships.@ However, they direct this Court to but one authority to support their assertion, *Zinsmeyer v. State*, 646 S.W.2d 626 (Tex. Civ. App.CSan Antonio 1983, no writ). In *Zinsmeyer*, Emil Zinsmeyer owned property conveyed to him by William Zinsmeyer. Emil=s deed included an easement granting him the use of a water well on William=s property. *Id.* at 627. The State brought condemnation proceedings against several landowners for the purpose of expanding a highway. *Id.* Included in the overall proceedings were a portion of Emil=s property and the portion of William=s property that contained the well. *Id.* In a discrete proceeding, Emil was awarded $3500 Aas compensation for the value of the land taken and for damages caused by the taking to the remainder of [Emil=s] property.@ *Id.* at

10

628. Upon Emil=s appeal of the award, he and the State agreed that any final judgment would include damages Aflowing from the loss of the use of a well on [William=s] lands.@ *Id.* At trial the parties stipulated that the value of Emil=s remaining land and improvements before the taking was $75,140 and that the only issue for the jury was the value of the remainder after the taking. *Id.* Upon the jury=s finding that the value of the remaining property, after the taking, was $75,140, the trial court awarded no damages. *Id.* Emil appealed. The court of appeals, in *dicta*, recited the undivided-fee rule and noted that it applied Ato a lease or other legal interest, such as an easement.@ *Id.* (citing *Trammel*, 407 S.W.2d at 774). The rule did not, however, form the basis for the court=s decision. The court observed not only that had Emil and the State agreed that the final judgment would include Adamages caused by the loss of any water rights and easements@ on William=s land, but also that Emil=s water easement was extinguished in the separate taking of William=s property, a proceeding to which Emil was not a party. *Id.* at 629. The court of appeals reversed and remanded the cause for the reason that the trial court had inadequately instructed the jury concerning Athe rules of compensation or damages applicable@ to the easement at issue, *id.* at 628, causing the jury to be Aconfused about the relative rights of [Emil] as [an] easement owner[], and William . . . as the owner of the land upon which the well was located,@ *id.* at 629.

*Zinsmeyer=s* precedential value is further limited by the fact that it is a plurality opinion, with a concurrence and dissent. The concurrence opines that A[t]he one and only remaining issue for the jury to decide is whether sufficient compensation has been paid for the easement already.@ *Id.* (Butts, J., concurring). The dissent, without mentioning the undivided-fee rule, infers that the rule perhaps should have been applied in the proceedings against William=s property: AI believe that the [State] paid for the water

11

easement at the time [it] paid William . . . for the water well. What was paid for the well was subject to distribution among the fee owner and any others having an interest in the property.@ *Id.* at 629-30 (Dial, J., dissenting) (citing *Trammel*, 407 S.W.2d at 774).

Because the basic purpose of the undivided fee rule is to award full compensation for the land itself and not for the sum of the different parts, *see* 4 Nichols at ' 12.05[1], it may be thought of as a rule of *allocation*, as opposed to *valuation*. As explained by the Georgia Supreme Court:

> Under the rule, the fair market value of the property that was taken is generally the maximum amount that the condemnees can recover for their lost interests in the real property. This is true because, when the value of the real property that was taken is being determined, any Avalue@ in the [other estate] generally results in a corresponding loss in the Avalue@ of the fee.

*Fulton County v. Funk*, 463 S.E.2d 883, 885 (Ga. 1995). Thus, if there are two or more interests in the same tract of land entitled to compensation from the condemnor, the condemnor=s total payment, however it is allocated among the various interests, may not be greater than the value of the land. In other words, the sum of the values of the land=s component estates may not exceed the value of the land when viewed as a single estate.

We hold that the district court erred in applying the undivided-fee rule to the facts of this case. The State sought to obtain but one estate, the underlying remaining fee interest of the Wares. The State already owned the only other interestCthe easement that it took in 1968. There could be no allocation of damages among competing estates. Under these circumstances, the only issue to be determined is the value of the Wares= fee interest in the land, as encumbered by the State=s highway right-of-way easement.

12

We have found no Texas case addressing facts similar to those before us. However, we are guided by the California Court of Appeal=s analysis in *Federal Oil Co. v. City of Culver City*, 3 Cal. Rptr. 519 (Cal. Ct. App. 1960). The city owned land subject to an oil and gas lease held by Federal Oil. The lease accorded Federal Oil the right to use the surface of the land Ato drill for, process and store thereon gas, oil and other hydrocarbons@ produced from the land. *Id.* at 521. When the city refused to vacate the surface, Federal Oil sued the city alleging inverse condemnation. *Id.* The court found that, generally, the undivided-fee rule would apply, A[b]ut, the case which is before us is not the usual situation. The city already owned all interests other than those owned by Federal [Oil]. *Therefore, the issue is solely as to the market value of Federal [Oil]=s rights in the surface of the subject land.@ Id.* at 522; *see also* 4 Nichols at ' 12.05[2] (AAn[] exception to the undivided fee rule arises where the condemnor already owns all the interests in the land except that of the condemnee.@).

At trial the only valuation testimony admitted by the district court was that of the Wares= expert witness, who testified that he estimated the fair market value of the entire property and then allocated Athe two interests involved.@ He based his value estimate on the Aunified fee theory.@ The jury accepted the testimony and found that the value of the property should be apportioned one-half to the Wares and one-half to the State. The district court rendered judgment accordingly. The so-called Aunified fee@ was no more than a theoretical creation. We therefore sustain the State=s second issue.

*Nominal Damages*

We now consider the State=s first issue, which argues that, as a matter of law, the Wares were only entitled to nominal damages for the taking of their remaining interest in the property, such interest

13

being burdened by the State=s highway right-of-way easement. There is no doubt that when the tract of land is valued as a whole, it is of considerable valueCcertainly when compared to its value at the time of the original taking in 1968. The Wares originally accepted $35,000 for what Joe Ware believed to be all of the Wares Aright, title and interest in the property. The jury apparently found the value of the entire tract on November 13, 1992, to be $1,200,000.[8] And it is true that the current taking has united the two separate interests in a sole owner, the State.

---

[8] No explanation is found in the record for the district court=s use of this date for valuation of the property. In its brief the State posits, AApparently by agreement, it was determined that November 13, 1992 would be the >date of take= to be applied in the trial of this case, although there are no stipulations or court findings to that effect.@ The Wares= brief states that A[s]hortly after completion of the intersection in 1992, the State turned the property over to one of its contractors, a for-profit Florida corporation which used it for office space, parking and stockpiling of equipment and materials within a fenced enclosure.@

Further, the clerk=s record does not contain a complete copy of the court=s charge to the jury. The parties have stipulated that the charge contained in the record Ais a true and correct copy of the Court=s Charge submitted to the jury in the trial of this case, minus the Judge=s signature and the jury=s answers to the questions posed.@ No explanation is provided for the absence of the complete charge. We thus rely on statements found in the district court=s final judgment and the parties= briefs to determine the jury=s answers to the charge=s questions.

However, we agree with the principle that a condemnee must be paid for what it has lost, not for what the condemnor has gained, *see Funk*, 463 S.E.2d at 885, and, as we have previously observed, where the condemnor already owns all interest in the land except that of the condemnee, the market value of the condemnee=s interest is the sole issue, *see Federal Oil*, 3 Cal. Rptr. at 522. A condemnor Ais liable for compensation for the property actually taken by condemnation.@ *Missouri-Kan.-Tex. Ry. v. Rockwall County Levee Improvement Dist. No. 3*, 297 S.W.206, 210 (Tex. 1927). Thus, we believe the proper measure of damages in a case involving the taking of property burdened by an existing easement is to value the interest actually taken. This is not a new concept. In *Boston Chamber of Commerce v. City of Boston*, the chamber owned the fee to property being taken by the city for a street. 217 U.S. 189, 193 (1910). The chamber=s fee was encumbered by Aan easement of way, light, and air@ held by a third party. *Id.* In rejecting the chamber=s argument that the chamber was entitled to payment of a proportionate share of the value of the entire property taken, Justice Holmes wrote:

> [T]he Constitution does not require a disregard of the mode of ownership,Cof the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained? We regard it as entirely plain that the [chamber was] not entitled, as a matter of law, to have damages estimated as if the land was the sole property of one owner . . . .

*Id.* at 195; *see also United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946) (Acompensation is made for the value of the rights taken@); *Augusta Power Co. v. United States*, 278 F.2d 1, 5 (5th Cir. 1960) (AThe compensation to be paid is the value of the interest taken.@).

15

Here, the interest taken is the fee to the land as encumbered by the State=s easement. The question before us is whether such interest, as a matter of law, has only nominal value. In making such a determination, we look at the respective rights to use the property of the easement holder and the fee holder. A railway company is entitled to use as much of the property appropriated as may be necessary for the use and enjoyment of its franchise, including space above the ground. *Southwestern Tel. & Tel. Co. v. Clark*, 192 S.W. 1077, 1078 (Tex. Civ. App.CTexarkana 1917, writ ref=d). A landowner may not erect buildings on a railroad right-of-way, even if the railroad corporation does not expect to put in use the ground proposed to be occupied by the buildings. *Fort Worth & D.C. Ry. v. Craig*, 176 S.W. 827, 829 (Tex. Civ. App.CFort Worth 1915, no writ). A[W]here a width of land is dedicated to roadway easement, the amount dedicated is not reduced by actual use of a lesser width.@ *Steinberger v. Archer County*, 621 S.W.2d 838, 842 (Tex. App.CFort Worth 1981, no writ) (citing *Pois v. Sharman*, 296 S.W. 665 (Tex. Civ. App.CTexarkana 1927, writ ref=d); *Brunner Fire Co. v. Payne*, 54 Tex. Civ. App. 501, 118 S.W. 602 (1909, no writ)); *see also Nonken v. Bexar County*, 221 S.W.2d 370, 374 (Tex. Civ. App.CEastland 1949, writ ref=d n.r.e.) (roadway acquired by public by prescription not lost by public=s failure to travel full width of road). And it is presumed that the condemnor will exercise its right and use the property taken to the fullest extent of the right acquired; this includes the right to remove any and all improvements on the property and exclude others from the property. *City of Corpus Christi v. Polasek*, 404 S.W.2d 826, 832 (Tex. Civ. App.CCorpus Christi 1966, no writ).

American Jurisprudence expresses these considerations in terms of the likelihood that the easement will be perpetual:

16

While it is no doubt true that ordinarily a city or town or a railroad company in acquiring land for a highway or railroad is entitled to acquire by condemnation proceedings only an easement over the land, and that the fee thereof remains in the owner, yet in most condemnation cases for highways or railroads this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee, of which the law will take notice. Hence, in ordinary cases, where condemnation for a right of way is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right-of-way acquired, though technically an easement, will be permanent in its nature, and the possibility of abandonment by nonuser so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; and that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value. In such circumstances, as there can be no substantial determinative value in the fee apart from the easement, the law will not consider them separately, but will require the condemning corporation to pay the value of the fee as the measure of the damages sustained.

18 Am. Jur. *Eminent Domain* ' 251 (1938) (cited with approval in *Thompson*, 251 S.W.2d at 956). But, in *Thompson*, the supreme court stopped short of holding, as a matter of law, that in these circumstances the remaining fee had but nominal value. Rather, the court restricted its holding to the facts before it: AWe need not determine whether or not in all cases the condemnation of land for a highway or railroad leaves the condemnee with no beneficial use of the land, but in this case there is no evidence that any beneficial use was left in the condemnee.@ *Thompson*, 251 S.W.2d at 956.

Although we believe it likely that in 1968 the Wares were paid for the full fee value of their property, the evidence in the record is inconclusive. The Wares agreed to a judgment awarding them $35,000 and stipulate that, at the time, Joe Ware believed that the State had acquired all of the Wares=

17

Aright, title and interest@ in their property.  The record, however, contains no evidence of the derivation of the award.

Under these circumstances, we believe that this case should be remanded.  We thus overrule the State=s first issue.

*Nature and Extent of Rights for Highway Right-of-Way*

The State=s third issue concerns the nature and extent of the rights granted by the 1968 easement.  It challenges the district court=s interlocutory order that found the State liable to the Wares in inverse condemnation.  Because the State later amended its pleadings to seek the remainder of the Ware=s interest in direct condemnation, and it was on this basis that the case was tried, the issue was rendered moot.  Therefore, we do not address the State=s third issue.

## CONCLUSION

**We reverse the judgment of the district court and remand this cause for further proceedings not inconsistent with this opinion.**

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Remanded

Filed:   October 10, 2002

18

Publish