TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00516-CV







State of Texas, Appellant


v.


Joe L. Ware and the Estate of Christine Ware, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. 97-09229, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING






 In 1968 appellant the State of Texas obtained, through the exercise of its power of
eminent domain, an easement for highway right-of-way purposes over property in Travis County
owned by appellee Joe L. Ware and his wife Christine Ware (the "Wares"). In this subsequent
action, the district court found that the State's use of the property exceeded its easement rights and
awarded $600,000 to the Wares for the State's condemnation of their remaining fee interest in the
property. (1) The State brings three issues on appeal. We will reverse the district-court judgment and
remand the case.

BACKGROUND


 In 1952 the Wares acquired 2.226 acres of land in Travis County fronting U.S.
Highway 183. They occupied the property as their family residence until 1968. The dispute in this
case revolves around two separate condemnation actions by the State. The first occurred in 1968
when the State, in a partial taking, condemned and acquired a highway right-of-way easement over
the Wares' entire property. The second arises from the final judgment in the case now before this
Court, awarding the State title to the property's remaining underlying fee and damages to the Wares.


The 1968 Taking

 In 1968 the State and Travis County brought an action in Travis County Court to
condemn the Wares' property for the purpose of constructing an interchange between U.S. Highway
183 and the yet to be constructed Loop 360. State v. Ware, No. 602 (County Court, Travis County,
Tex. Dec. 17, 1968). At the time of such action, counties held a general power of eminent domain. 
Act of March 7, 1948, 43rd Leg., 2d C.S., ch. 37, 1934 Tex. Gen. Laws 89, repealed by Act of Jan.
1, 1984, 68th Leg., R.S., ch. 576, § 6, 1984 Tex. Gen. Laws 3729, 3730 (now codified at Tex. Prop.
Code Ann. § 21.001-.023 (West 1984 & Supp. 2002)). Condemnation proceedings by a county were
required to "be instituted under the direction of the commissioners' court and in the name of the
county." Act of March 26, 1925, 39th Leg., R.S., ch. 116, 1925 Tex. Gen. Laws 300, repealed by
Act of Jan. 1, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3729, 3730 (emphasis
added). However, if the county was exercising the right of eminent domain over land needed for
state highway purposes, the land was taken in the name of the State. See Op. Tex. Att'y Gen. No.
V-1282 (1951). The only authority for counties to institute such proceedings "on behalf of the State 

of Texas" and "with title to the State of Texas" was found in former article 6674n, which applied
only to land needed for designated state highways. (2) Act of April 2, 1925, 39th Leg., R.S., ch. 186,
§14, 1925 Tex. Gen. Laws 458, repealed by Act of Sept. 1, 1983, 68th Leg., R.S., ch. 288, § 2, 1983
Tex. Gen. Laws 1526. Under such provision, "the commissioners' court act[ed] not for the benefit
of the county but as the authorizing agent of the State and institut[ed] the condemnation proceedings
in the name of the State." Op. Tex. Att'y Gen. No. V-1282 (1951). The commissioners' court was
not authorized to take the property in fee, but could condemn only a highway right-of-way. Id. (3)
 
Consequently, there could not be a total taking of the Wares' property. Instead, the State acquired
a right-of-way for highway purposes over the Wares' entire 2.226 acres. 

 The practical effect of the taking, however, was to deny the Wares all beneficial use
of the property. The Wares agreed to a judgment awarding them $35,000. The Wares stipulated
that, at the time of the taking, Joe Ware believed that all of the property was "needed for highway
purposes and that the [taking] divested the [Wares] of all of their right, title and interest in the
property." There is no evidence in the record before us, and the Wares do not argue, that the 1968
judgment awarded them less than the full fair market value of the property at that time. Such an
award would be consistent with the taking of an easement for highway purposes. As explained by
the supreme court:


In some cases the measure of damages for the taking of an easement by
condemnation proceedings is the difference in the market value of the land free of the
easement and its market value burdened with the easement. If the easement leaves
the landowner with some beneficial use of the land, as it does, for instance, in the
case of easements for pipe lines, power lines, or other similar purposes, then the
damages for the condemnation thereof, as a matter of law, will be less than the value
of the fee. A distinction must be drawn, however, between such easements and
easements which deprive the landowner of any beneficial use of the land. In the
latter class of easements the landowner may recover as damages the market value
of the land.



Thompson v. Janes, 251 S.W.2d 953, 956 (Tex. 1952) (emphasis added) (citations omitted). At the time of the taking, the State planned to construct a "cloverleaf" interchange
at Highway 183 and the new Loop 360, with the Wares' property constituting the interchange's
southeast quadrant. At some undetermined later date, the State changed the design plan from a
cloverleaf to a smaller "diamond" configuration, leaving 1.374 acres free from any road surface. 
However, the State has retained the remaining property and is allowing a private highway contractor
to use the portion for office space and storage. It is this part of the original property that forms the
subject matter of the Wares' current complaint. The State stipulated that it has no plans to construct
any roadway or roadway appurtenance within the disputed area, but still retains its easement. The
State declared as surplus and reconveyed, either through sale or exchange, the unused portions of
the other quadrants of the intersection. (4) However, the State denied the Wares' request that the State
declare the "unused portion" of their land as surplus and reconvey it to them. Consequently, at all
times since the 1968 taking, the State has held an easement over all of the property originally taken
from the Wares.


The Current Taking

 Not until 1996 did Joe Ware realize that the Wares still retained some ownership
interest in the property. When the State refused to relinquish its easement over the portion of the
property not being used for highway purposes, the Wares filed this suit originally requesting that the
district court "grant Declaratory Judgment that the 1968 Easement has terminated." The Wares
amended their original petition to include claims for injunctive relief and inverse condemnation. By
interlocutory order, the district court found "that the State's use of the subject property has, for some
time, exceeded those rights granted in the [1968] condemnation judgment so that the [Wares] are
entitled to recover, in inverse condemnation, for the taking of their remaining rights in the property." (5) 
Significantly, the district court neither found that the State's easement had terminated nor terminated
the easement. The State then counterclaimed, seeking "fee title to the entire property which is
subject to the State's easement and which is the subject of this suit . . . and this Court enter its
judgment determining the value of the fee title so acquired." After a jury trial, the district court
rendered final judgment awarding the State title to the property and the Wares $600,000, the amount
the jury found to be "the market value of the [Wares'] remaining interest in the property." (6)

 The State appeals the district-court judgment by three issues, contending that the
district court erred (1) in awarding the Wares more than nominal damages; (2) in applying the
undivided-fee rule (7) to arrive at the value of the Wares' remaining interest in the property; and (3) in
finding that the State had exceeded its rights under the 1968 easement.




DISCUSSION

 Eminent domain has been described as "one of the inalienable rights of sovereignty. 
It is the power to take private property for public use." Fort Worth & D.C. Ry. v. Ammons, 215
S.W.2d 407, 409 (Tex. Civ. App.--Amarillo 1940, writ ref'd n.r.e.). But it is axiomatic that
government cannot take a citizen's property without payment of the property's fair value. The
United States Constitution provides that private property may not be taken for public use without just
compensation. U.S. Const. amend. V. This provision is made applicable to the states by the
Fourteenth Amendment, which provides that no state may deprive any person of property without
due process of law. U.S. Const. amend. XIV, § 1. The Texas Constitution likewise prohibits the
State from taking private property without first paying adequate compensation to the owner: "No
person's property shall be taken, damaged or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17.

 That the State had the right to take the original easement from the Wares and, later,
their remaining interest is without dispute. The controversy this case brings to the Court involves
the standard to be applied to determine the fair, just, and adequate compensation to which the Wares
are entitled by virtue of the State's decision to exercise its power of eminent domain over property
owned by the Wares and subject to the State's previously acquired easement. 


The Undivided-Fee Rule

 By its second issue, the State challenges the district court's use of the undivided-fee
rule as a method for determining damages in this case. Damages are measured by a legal standard
that must be used to guide the fact finder in determining what sum would compensate the injured
party. Jackson v. Fontaine's Clinics, Inc., 499 S.W.2d 87, 90 (Tex. 1973). The proper measure of
damages is a question of law. Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.--Houston
[14th Dist.] 1999, pet. denied) (citing Chrysler Corp. v. McMorries, 657 S.W.2d 858, 862 (Tex.
App.--Amarillo 1983, no writ); Johnson v. Willis, 596 S.W.2d 256, 262 (Tex. Civ. App.--Waco),
writ ref'd n.r.e., 603 S.W.2d 828 (Tex. 1980)). When an issue turns on a question of law, we do not
give any particular deference to legal conclusions of the trial court and apply a de novo standard of
review. Trinity Indus. Inc. v. Ashland, Inc., 53 S.W.3d 852, 868 (Tex. App.--Austin 2001, pet.
denied).

 The undivided-fee rule provides that


when a tract of land is taken by eminent domain, because the land itself is taken by
a paramount title rather than through the separate estates of different persons having
interests in the land, the compensation awarded is for the land itself and not for the
sum of the different interests therein. The duty of the public to make payment for the
property which it has taken is not affected by the nature of the title or by the diversity
of interests in the property. The public pays what the land is worth, and the amount
so paid is to be divided among the various claimants, according to the nature of their
respective estates.



4 Julius L. Sackman, Nichols on Eminent Domain §12.05[1] (3d ed. 2001) (hereinafter "Nichols")
(footnotes omitted). In Texas the rule has most often been expressed and followed when the
property being taken is subject to a leasehold:


In condemnation proceedings, where there are different estates in the property or
where the property is under a lease to a third party, the valuation of the various
estates or leasehold interest is usually determined by ascertaining the market value
of the property with the improvements thereon as though owned exclusively by one
party, and, in the absence of damages to other property not taken, this ordinarily
determines the extent of the liability of the party condemning the property. Such
amount, when so determined, should then be apportioned among the lessee and the
owners of the various estates in the land.



City of Waco v. Messer, 49 S.W.2d 822, 823 (Tex. Civ. App.--Waco 1932), rev'd on other grounds,
78 S.W.2d 169 (Tex. 1935); see also Urban Renewal Agency v. Trammel, 407 S.W.2d 773, 774
(Tex. 1966); Aronoff v. City of Dallas, 316 S.W.2d 302, 307 (Tex. Civ. App.--Dallas 1958, writ
ref'd n.r.e.); Frankfurt v. Texas Tpk. Auth., 311 S.W.2d 261, 267 (Tex. Civ. App.--Texarkana 1958,
no writ) (citing City of St. Louis v. Rossi, 64 S.W.2d 600, 604 (Mo. 1933)); Reeves v. City of Dallas,
195 S.W.2d 575, 581-82 (Tex. Civ. App.--Dallas 1946, writ ref'd n.r.e).

 The Wares assert that the undivided-fee rule "has also been consistently applied in
cases involving easements and other undivided ownerships." However, they direct this Court to but
one authority to support their assertion, Zinsmeyer v. State, 646 S.W.2d 626 (Tex. Civ. App.--San
Antonio 1983, no writ). In Zinsmeyer, Emil Zinsmeyer owned property conveyed to him by William
Zinsmeyer. Emil's deed included an easement granting him the use of a water well on William's
property. Id. at 627. The State brought condemnation proceedings against several landowners for
the purpose of expanding a highway. Id. Included in the overall proceedings were a portion of
Emil's property and the portion of William's property that contained the well. Id. In a discrete
proceeding, Emil was awarded $3500 "as compensation for the value of the land taken and for
damages caused by the taking to the remainder of [Emil's] property." Id. at 628. Upon Emil's
appeal of the award, he and the State agreed that any final judgment would include damages
"flowing from the loss of the use of a well on [William's] lands." Id. At trial the parties stipulated
that the value of Emil's remaining land and improvements before the taking was $75,140 and that
the only issue for the jury was the value of the remainder after the taking. Id. Upon the jury's
finding that the value of the remaining property, after the taking, was $75,140, the trial court
awarded no damages. Id. Emil appealed. The court of appeals, in dicta, recited the undivided-fee
rule and noted that it applied "to a lease or other legal interest, such as an easement." Id. (citing
Trammel, 407 S.W.2d at 774). The rule did not, however, form the basis for the court's decision. 
The court observed not only that had Emil and the State agreed that the final judgment would include
"damages caused by the loss of any water rights and easements" on William's land, but also that
Emil's water easement was extinguished in the separate taking of William's property, a proceeding
to which Emil was not a party. Id. at 629. The court of appeals reversed and remanded the cause
for the reason that the trial court had inadequately instructed the jury concerning "the rules of
compensation or damages applicable" to the easement at issue, id. at 628, causing the jury to be
"confused about the relative rights of [Emil] as [an] easement owner[], and William . . . as the owner
of the land upon which the well was located," id. at 629.

 Zinsmeyer's precedential value is further limited by the fact that it is a plurality
opinion, with a concurrence and dissent. The concurrence opines that "[t]he one and only remaining
issue for the jury to decide is whether sufficient compensation has been paid for the easement
already." Id. (Butts, J., concurring). The dissent, without mentioning the undivided-fee rule, infers
that the rule perhaps should have been applied in the proceedings against William's property: "I
believe that the [State] paid for the water easement at the time [it] paid William . . . for the water
well. What was paid for the well was subject to distribution among the fee owner and any others
having an interest in the property." Id. at 629-30 (Dial, J., dissenting) (citing Trammel, 407 S.W.2d
at 774).

 Because the basic purpose of the undivided fee rule is to award full compensation for
the land itself and not for the sum of the different parts, see 4 Nichols at § 12.05[1], it may be
thought of as a rule of allocation, as opposed to valuation. As explained by the Georgia Supreme
Court:

Under the rule, the fair market value of the property that was taken is generally the
maximum amount that the condemnees can recover for their lost interests in the real
property. This is true because, when the value of the real property that was taken is
being determined, any "value" in the [other estate] generally results in a
corresponding loss in the "value" of the fee.



Fulton County v. Funk, 463 S.E.2d 883, 885 (Ga. 1995). Thus, if there are two or more interests in
the same tract of land entitled to compensation from the condemnor, the condemnor's total payment,
however it is allocated among the various interests, may not be greater than the value of the land. 
In other words, the sum of the values of the land's component estates may not exceed the value of
the land when viewed as a single estate.

 We hold that the district court erred in applying the undivided-fee rule to the facts of
this case. The State sought to obtain but one estate, the underlying remaining fee interest of the
Wares. The State already owned the only other interest--the easement that it took in 1968. There
could be no allocation of damages among competing estates. Under these circumstances, the only
issue to be determined is the value of the Wares' fee interest in the land, as encumbered by the
State's highway right-of-way easement.

 We have found no Texas case addressing facts similar to those before us. However, 
we are guided by the California Court of Appeal's analysis in Federal Oil Co. v. City of Culver City,
3 Cal. Rptr. 519 (Cal. Ct. App. 1960). The city owned land subject to an oil and gas lease held by
Federal Oil. The lease accorded Federal Oil the right to use the surface of the land "to drill for,
process and store thereon gas, oil and other hydrocarbons" produced from the land. Id. at 521. 
When the city refused to vacate the surface, Federal Oil sued the city alleging inverse condemnation. 
Id. The court found that, generally, the undivided-fee rule would apply, "[b]ut, the case which is
before us is not the usual situation. The city already owned all interests other than those owned by
Federal [Oil]. Therefore, the issue is solely as to the market value of Federal [Oil]'s rights in the
surface of the subject land." Id. at 522; see also 4 Nichols at § 12.05[2] ("An[] exception to the
undivided fee rule arises where the condemnor already owns all the interests in the land except that
of the condemnee."). 

 At trial the only valuation testimony admitted by the district court was that of the
Wares' expert witness, who testified that he estimated the fair market value of the entire property
and then allocated "the two interests involved." He based his value estimate on the "unified fee
theory." The jury accepted the testimony and found that the value of the property should be
apportioned one-half to the Wares and one-half to the State. The district court rendered judgment
accordingly. The so-called "unified fee" was no more than a theoretical creation. We therefore
sustain the State's second issue.


Nominal Damages

 We now consider the State's first issue, which argues that, as a matter of law, the
Wares were only entitled to nominal damages for the taking of their remaining interest in the
property, such interest being burdened by the State's highway right-of-way easement. There is no
doubt that when the tract of land is valued as a whole, it is of considerable value--certainly when
compared to its value at the time of the original taking in 1968. The Wares originally accepted
$35,000 for what Joe Ware believed to be all of the Wares "right, title and interest in the property. 
The jury apparently found the value of the entire tract on November 13, 1992, to be $1,200,000. (8) 
And it is true that the current taking has united the two separate interests in a sole owner, the State.

 However, we agree with the principle that a condemnee must be paid for what it has
lost, not for what the condemnor has gained, see Funk, 463 S.E.2d at 885, and, as we have previously
observed, where the condemnor already owns all interest in the land except that of the condemnee,
the market value of the condemnee's interest is the sole issue, see Federal Oil, 3 Cal. Rptr. at 522. 
A condemnor "is liable for compensation for the property actually taken by condemnation." 
Missouri-Kan.-Tex. Ry. v. Rockwall County Levee Improvement Dist. No. 3, 297 S.W.206, 210 (Tex.
1927). Thus, we believe the proper measure of damages in a case involving the taking of property
burdened by an existing easement is to value the interest actually taken. This is not a new concept. 
In Boston Chamber of Commerce v. City of Boston, the chamber owned the fee to property being
taken by the city for a street. 217 U.S. 189, 193 (1910). The chamber's fee was encumbered by "an
easement of way, light, and air" held by a third party. Id. In rejecting the chamber's argument that
the chamber was entitled to payment of a proportionate share of the value of the entire property
taken, Justice Holmes wrote:


[T]he Constitution does not require a disregard of the mode of ownership,--of the
state of the title. It does not require a parcel of land to be valued as an unencumbered
whole when it is not held as an unencumbered whole. It merely requires that an
owner of property taken should be paid for what is taken from him. It deals with
persons, not with tracts of land. And the question is, What has the owner lost? not,
What has the taker gained? We regard it as entirely plain that the [chamber was] not
entitled, as a matter of law, to have damages estimated as if the land was the sole
property of one owner . . . .



Id. at 195; see also United States v. Petty Motor Co., 327 U.S. 372, 376 (1946) ("compensation is
made for the value of the rights taken"); Augusta Power Co. v. United States, 278 F.2d 1, 5 (5th Cir.
1960) ("The compensation to be paid is the value of the interest taken.").

 Here, the interest taken is the fee to the land as encumbered by the State's easement. 
The question before us is whether such interest, as a matter of law, has only nominal value. In
making such a determination, we look at the respective rights to use the property of the easement
holder and the fee holder. A railway company is entitled to use as much of the property appropriated
as may be necessary for the use and enjoyment of its franchise, including space above the ground. 
Southwestern Tel. & Tel. Co. v. Clark, 192 S.W. 1077, 1078 (Tex. Civ. App.--Texarkana 1917, writ
ref'd). A landowner may not erect buildings on a railroad right-of-way, even if the railroad
corporation does not expect to put in use the ground proposed to be occupied by the buildings. Fort
Worth & D.C. Ry. v. Craig, 176 S.W. 827, 829 (Tex. Civ. App.--Fort Worth 1915, no writ). 
"[W]here a width of land is dedicated to roadway easement, the amount dedicated is not reduced by
actual use of a lesser width." Steinberger v. Archer County, 621 S.W.2d 838, 842 (Tex. App.--Fort
Worth 1981, no writ) (citing Pois v. Sharman, 296 S.W. 665 (Tex. Civ. App.--Texarkana 1927, writ
ref'd); Brunner Fire Co. v. Payne, 54 Tex. Civ. App. 501, 118 S.W. 602 (1909, no writ)); see also
Nonken v. Bexar County, 221 S.W.2d 370, 374 (Tex. Civ. App.--Eastland 1949, writ ref'd n.r.e.)
(roadway acquired by public by prescription not lost by public's failure to travel full width of road).
And it is presumed that the condemnor will exercise its right and use the property taken to the fullest
extent of the right acquired; this includes the right to remove any and all improvements on the
property and exclude others from the property. City of Corpus Christi v. Polasek, 404 S.W.2d 826,
832 (Tex. Civ. App.--Corpus Christi 1966, no writ).

 American Jurisprudence expresses these considerations in terms of the likelihood that
the easement will be perpetual: 


While it is no doubt true that ordinarily a city or town or a railroad company in
acquiring land for a highway or railroad is entitled to acquire by condemnation
proceedings only an easement over the land, and that the fee thereof remains in the
owner, yet in most condemnation cases for highways or railroads this distinction, as
far as it enters into a determination of the damages to be assessed for the right of way
acquired thereby, has no practical application. Usually in such cases there is no
substantial difference in value between the easement and the fee, of which the law
will take notice. Hence, in ordinary cases, where condemnation for a right of way is
sought, evidence is permitted to show, as the damages sustained, the full value of the
land taken, upon the theory that the easement will be perpetual; that the right-of-way
acquired, though technically an easement, will be permanent in its nature, and the
possibility of abandonment by nonuser so remote and improbable as not to be taken
into consideration; that the exercise of the right will require practically the exclusive
use of the surface; and that any interest which might be reserved to the owner in the
fee would only be a nominal one and of no value. In such circumstances, as there can
be no substantial determinative value in the fee apart from the easement, the law will
not consider them separately, but will require the condemning corporation to pay the
value of the fee as the measure of the damages sustained. 



18 Am. Jur. Eminent Domain § 251 (1938) (cited with approval in Thompson, 251 S.W.2d at 956). 
But, in Thompson, the supreme court stopped short of holding, as a matter of law, that in these
circumstances the remaining fee had but nominal value. Rather, the court restricted its holding to
the facts before it: "We need not determine whether or not in all cases the condemnation of land for
a highway or railroad leaves the condemnee with no beneficial use of the land, but in this case there
is no evidence that any beneficial use was left in the condemnee." Thompson, 251 S.W.2d at 956.

 Although we believe it likely that in 1968 the Wares were paid for the full fee value
of their property, the evidence in the record is inconclusive. The Wares agreed to a judgment
awarding them $35,000 and stipulate that, at the time, Joe Ware believed that the State had acquired
all of the Wares' "right, title and interest" in their property. The record, however, contains no
evidence of the derivation of the award.

 Under these circumstances, we believe that this case should be remanded. We thus
overrule the State's first issue.


Nature and Extent of Rights for Highway Right-of-Way

 The State's third issue concerns the nature and extent of the rights granted by the
1968 easement. It challenges the district court's interlocutory order that found the State liable to the
Wares in inverse condemnation. Because the State later amended its pleadings to seek the remainder
of the Ware's interest in direct condemnation, and it was on this basis that the case was tried, the
issue was rendered moot. Therefore, we do not address the State's third issue. 


CONCLUSION


 We reverse the judgment of the district court and remand this cause for further
proceedings not inconsistent with this opinion.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Reversed and Remanded

Filed: October 10, 2002

Publish

1. This action was originally filed by the Wares against the commissioners of the Texas
Transportation Commission and an employee of the Texas Department of Transportation. During
its pendency, Christine Ware died and her estate was substituted in her stead. As used herein, "the
Wares" includes the Estate of Christine Ware. The Wares later added the State as a defendant. 
When the State counterclaimed to condemn the Wares' remaining fee interest in the property, the
Wares dismissed their action against the individual defendants.
2. Current provisions for eminent domain proceedings through county commissioners court
can be found in Tex. Prop. Code Ann. §§ 21.001-.023.
3. Former Article 6674n, entitled "Condemnation of Right of Way and Materials by
Commissioners' Court," provided:


Whenever, in the judgment of the State Highway Commission, the use or
acquisition of any land for road, right of way purposes . . . is necessary or
convenient to any road to be constructed . . . in connection with the locating,
relocating or construction of a designated State highway by the State Highway
commission, the same may be acquired by purchase or condemnation by the
County commissioners' court . . . . [T]he county in which the State highway is
located may pay for same out of the County Road and Bridge Fund, or any
available county funds . . . . [T]he commissioners Court may, and is hereby
authorized to purchase or condemn the same, with title to the State of Texas.


Act of April 2, 1925, 39th Leg., R.S., ch. 186, § 14, 1925 Tex. Gen. Laws 458, repealed by Act of
Sept. 1, 1983, 68th Leg., R.S., ch. 288, § 2, 1983 Tex. Gen. Laws 1526.

4. The transportation code provides a process by which the State may, at its discretion, divest
itself of property acquired for a highway purpose when it no longer needs it for that purpose. Tex.
Trans. Code Ann. § 202.021(a) (West 1999).
5. The interlocutory order was signed by Judge W. Jeanne Meurer.
6. The final judgment was signed by Judge William E. Bender.
7. The parties' briefs refer to the "unified fee theory" and the "unified fee rule." Case law
sometimes uses one or the other of the parties' terms, but also refers to the "undivided fee rule" and
the "undivided fee theory." Nichols's treatise uses the "undivided fee rule." We will use the term 
"undivided-fee rule."
8. No explanation is found in the record for the district court's use of this date for valuation
of the property. In its brief the State posits, "Apparently by agreement, it was determined that
November 13, 1992 would be the 'date of take' to be applied in the trial of this case, although there
are no stipulations or court findings to that effect." The Wares' brief states that "[s]hortly after
completion of the intersection in 1992, the State turned the property over to one of its contractors,
a for-profit Florida corporation which used it for office space, parking and stockpiling of equipment
and materials within a fenced enclosure."

 

 Further, the clerk's record does not contain a complete copy of the court's charge to the
jury. The parties have stipulated that the charge contained in the record "is a true and correct copy
of the Court's Charge submitted to the jury in the trial of this case, minus the Judge's signature and
the jury's answers to the questions posed." No explanation is provided for the absence of the
complete charge. We thus rely on statements found in the district court's final judgment and the
parties' briefs to determine the jury's answers to the charge's questions.